Phil JENSEN, Plaintiff,

v.

The BOARD OF COUNTY COMMISSIONERS FOR the COUNTY OF SEDGWICK, KANSAS, et al., Defendants.

No. 84–1401–K.

United States District Court,
D. Kansas.

May 28, 1986.

Kristy L. Simpson, Williamson, McGee, Griggs & DeMoss, Chartered, Wichita, Kan., for plaintiff.

Stephen B. Plummer, Rumsey, Richey & Plummer, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This case is before the Court on defendants' motion for partial summary judgment. Plaintiff Phil Jensen brought suit against the Board of County Commissioners, Sedgwick County, and the Sedgwick County Grievance Committee, alleging he was discriminated against based on sex while employed by the county as an animal care officer. He claims he was subjected to disparate treatment due to his sex, that he was discharged in retaliation for filing a grievance, and that he was not afforded procedural due process during the grievance hearing. Plaintiff seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2(a) and 2000e–3(a); the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983; and the Fourteenth Amendment of the United States Constitution. Plaintiff claims damages for lost pay and other job-related financial benefits, and for mental and emotional pain and suffering. Plaintiff further claims $10,000.00 in punitive damages, and attorney fees.

Defendants raise five issues in their motion for partial summary judgment: (1) whether punitive damages are recoverable under 42 U.S.C. § 1983 against government entities; (2) whether 42 U.S.C. § 1981 is applicable in a sex discrimination case; (3) whether Title VII provides an exclusive remedy for sex discrimination in employment and does not permit the bringing of a separate action under 42 U.S.C. § 1983 premised on a violation of the Fourteenth Amendment guarantee of equal protection

of the laws for the same sex discrimination; (4) whether plaintiff, as a county employee, is barred from asserting a *Bivens-*type claim; and (5) whether this Court has jurisdiction over plaintiff's retaliatory discharge claim when such claim was not alleged in plaintiff's grievance filed with the Kansas Commission on Civil Rights.

Plaintiff has conceded that according to *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), punitive damages are not recoverable under 42 U.S.C. § 1983 against government entities. In this case, both defendants are government entities. Plaintiff has also conceded that 42 U.S.C. § 1981 applies only in race discrimination cases. This is a sex discrimination case. Accordingly, the § 1981 claim, and the prayer for punitive damages, are hereby dismissed.

As will be set forth below, the defendants' motion for summary judgment is granted as to the *Bivens-*type claim, and as to the claim for retaliatory discharge, but is denied as to defendants' assertion that Title VII is plaintiff's exclusive remedy.

The "exclusivity" of Title VII is the substantive issue before this Court and warrants thorough discussion. Upon its initial reading of defendants' motion and plaintiff's response, this Court was persuaded that a § 1983 claim probably should not be allowed to be brought in conjunction with a Title VII claim. The Court had before it a recent opinion by Judge Crow, *Goodall v. Sedgwick County,* No. 82–1914 (D.Kan. unpub. Oct. 11, 1985), in which the plaintiff had alleged sex discrimination and sexual harassment in violation of Title VII and § 1983. The *Goodall* court, relying on *Great American Federal Savings & Loan Assn v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), dismissed the plaintiff's § 1983 cause of action, ruling that she had not articulated a right secured by the Constitution which was *independent* of her Title VII claim. In reliance on *Goodall,* this Court indicated during oral arguments on the summary judgment motion that it would in all likelihood dismiss

the § 1983 claim and allow this case to proceed solely under Title VII. Plaintiff's counsel acquiesced that dismissing the § 1983 claim grounded in equal protection was probably the correct result, although she did briefly argue that the § 1983 claim grounded in denial of due process at the grievance hearing should be allowed to stand. However, when the Court articulated its belief that the due process claim also lacked independence, plaintiff's counsel again acquiesced in this result.

The Court has since had the opportunity to delve into this issue in some depth and is now convinced that its "first blush" reaction was incorrect. From a pragmatic standpoint, this Court has long pondered the utility of trying a discrimination case once to the jury (on the § 1983 claim) and once to the Court (on the Title VII claim). It has seemed logical that Title VII should be the "exclusive" remedy in discrimination cases. One commentator, in discussing whether both theories can be asserted in one action, observed, "It is ... true that from a judicial standpoint this result [allowing both theories] is inefficient and somewhat anomalous.... [Further] 'as a matter of policy it is undesirable to permit plaintiffs to circumvent the procedural and remedial limits of the Title VII scheme by pleading alternate causes of action, such as Section 1983, when the same facts underly both claims.' " Shapiro, *Section 1983 Claims to Redress Discrimination in Public Employment: Are They Preempted by Title VII?,* 35 Am.Univ.L.Rev. 93, 119 (1985), *quoting Storey v. Board of Regents of Univ. of Wisconsin,* 600 F.Supp. 838, 840 (W.D.Wisc.1985).

■ Despite these "pragmatic" concerns, the Court is now convinced that Congress, in enacting Title VII, did not intend to preclude state and local government employees from pursuing alternative remedies. This Court, in applying legislatively created remedies, must do so in accordance with legislative intent, even if it disagrees with the practical results.

When Title VII was originally enacted in 1964, it applied only to employment dis-

crimination in the private sector. In 1972 Congress extended the act to allow Title VII suits against state and local government employers under the same conditions as private employers. Prior to the amendment, public employees could bring a federal cause of action for discrimination under the Civil Rights Act of 1870 and 1871. Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another person of any constitutional or federal statutory rights. A government employer's discrimination on the basis of sex may violate rights guaranteed by the Constitution. *See Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979) (finding a constitutional right to be free from sex discrimination in government employment); *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976) (finding classifications based on gender violate the equal protection clause unless they bear a "close and substantial relationship to important governmental objectives").

When Title VII was amended to include state and local government employees, an overlap was created between Title VII and § 1983. However, there are enough differences in the procedures, remedies, and legal standards between Title VII and § 1983 that it is sometimes advantageous for an aggrieved employee to bring an action under both theories. For instance, in instigating an action under Title VII, a claimant must follow a detailed administrative procedure by filing with the appropriate state agency and the EEOC before bringing a lawsuit in federal district court. A § 1983 plaintiff may proceed directly to federal court, and is not burdened by the 180-day statute of limitations applicable in Title VII actions. The Title VII administrative procedures employ a form of informal dispute resolution, and may be advantageous to some, while not to others. The remedies provided for in the two statutes differ in that § 1983 provides for both equitable and legal relief, as opposed to Title VII which grants only equitable relief. Therefore, back pay, injunctive relief, and attorney fees are available under both theories, but

compensatory and punitive damages are only available in § 1983 actions. The legal standards differ in that a Title VII plaintiff may be able to recover for discrimination without proving intent, such as in an adverse impact case, while intent is a necessary element in a § 1983 case. *See Dothard v. Rawlinson*, 433 U.S. 321, 331–32, 97 S.Ct. 2720, 2727–28, 53 L.Ed.2d 786 (1977). Another key difference between the two remedies is that in a Title VII action there is no right to a jury trial as there is in a § 1983 action. *See, e.g., Slack v. Havens*, 522 F.2d 1091, 1094 (9th Cir. 1975).

▮▮▮ Due to these procedural and remedial differences, it is understandable why plaintiffs desire to have the availability of both theories. However, the usual rule is that when a statute provides a particular procedure and an exclusive remedy for violations—as does Title VII—§ 1983 may not be employed to obtain additional remedies. *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). There is an exception to this rule if Congress *intended* to allow the availability of additional remedies *even though* the statute contains a comprehensive remedial scheme. *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). The Supreme Court unanimously agrees that congressional intent alone governs the question of whether Title VII was meant to preempt existing statutory remedies. *See Brown v. General Services Administration*, 425 U.S. 820, 825, 96 S.Ct. 1961, 1964, 48 L.Ed.2d 402 (1976); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 461, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). If legislative history is silent on the issue of exclusivity, courts will infer Congress' intent to create an exclusive remedy. *Storey v. Board of Regents of Univ. of Wisconsin*, 600 F.Supp. 838, 841 (W.D.Wisc.1985). *See also Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961 (court found Title VII is exclusive remedy for *federal* employees; Congress was silent on this issue). In the case of state and local employees, the legislative history of

Title VII is *not* silent—in fact, it reveals a clear intent to leave untouched *preexisting* avenues of relief. The House Report on the 1972 amendment states:

> In establishing the applicability of Title VII to state and local employees, the committee wishes to emphasize that the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Acts of 1870 and 1871, 42 U.S.C. §§ 1981 *and 1983, is in no way affected* .... Title VII was envisioned as an independent statutory authority meant to provide an aggrieved individual with an *additional* remedy to redress employment discrimination.... [T]he bill, therefore, by extending jurisdiction to state and local government employees does not affect the existing rights that such individuals have already been granted by previous legislation.... Inclusion of state and local employees among those enjoying the protection of Title VII provides an *alternate* administrative remedy to the existing prohibition against *discrimination perpetrated "under color of state law" as embodied in the Civil Rights Act of 1871, 42 U.S.C. § 1983.*

H.R.Rep. No. 82–238, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Adm. News 2137, 2154 (emphasis added).

Even opponents to the 1972 amendment admitted they had failed to create an exclusive remedy:

> Despite the enactment of Title VII of the Civil Rights Act, charges of discriminatory employment conditions may still be brought under prior existing federal statutes such as the National Labor Relations Act and the Civil Rights Act of 1866. In view of the comprehensive prohibitions against discrimination contained in Title VII, and the intent of the committee bill to consolidate procedures and remedies in one agency, it would be consistent to make Title VII the exclusive remedy.... However, our attempt to amend the committee bill to make Title VII the exclusive remedy ... was rejected.

H.R.Rep. No. 238 (Minority Views) (1971), *reprinted in* 1972 U.S. Code Cong. & Adm. News 2137, 2175.

Although the legislative directive seems clear, courts differ in their approaches to the "exclusivity" issue. This divergence is due, at least in part, to mixed signals from the Supreme Court. Notably, the high court has never decided the precise issue of whether Title VII preempts § 1983 claims for employment discrimination.

In *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–1020, 39 L.Ed.2d 147 (1974), the plaintiff, an employee in the private sector, sought relief under both Title VII and § 1981. Based on legislative history, the court interpreted Title VII as providing a nonexclusive remedy for discrimination by private employers. The court stated:

> [T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination.

*In Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the court again found Title VII to be a nonexclusive remedy in a private race discrimination case, noting legislative history which states specifically that Title VII and § 1981 are intended to "augment each other and are not mutually exclusive." 421 U.S. at 459, 95 S.Ct. at 1719, *quoting* H.R. Rep. No. 82–238, p. 19 (1971).

Then, in *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the court concluded that in the 1972 enactment of § 717, which deals only with federal employees, Congress intended to "create an exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination." 425 U.S. at 829, 96 S.Ct. at 1966. The court found that although employment discrimination by the federal government clearly violated the

Constitution and § 1981, these remedies were ineffective. The court applied the rule that a precisely drawn, detailed statute preempts a more general one. Therefore, the court held that Title VII is the exclusive remedy for federal employees claiming discrimination. The court further found its decision in *Johnson* was "inapposite." 425 U.S. at 833, 96 S.Ct. at 1968. It distinguished *Johnson* as applying to private rather than public employment, and as having relied on legislative history of the 1964 act which indicated that Title VII and § 1981 were not intended to be mutually exclusive. The legislative history in regard to the exclusivity of § 717 is silent.

Most recently, in *Great American Federal Savings & Loan Assn v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), a discharged employee, who worked in the private sector, claimed he was fired in retaliation for supporting female co-workers who complained of disparate treatment. He sought redress under both Title VII and § 1985(3), although his § 1985 claim was premised on the Title VII violation. The court concluded § 1985(3) could not be invoked to redress a violation of a right created by Title VII (in this case, retaliatory discharge). The court was persuaded that "if a violation of Title VII could be asserted through § 1985(3) ... the complainant could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII." 442 U.S. at 375–76, 99 S.Ct. at 2350–51.

Since *Novotny*, federal courts have analogized that decision to cases where state and local employees seek recovery under both Title VII and § 1983. Unfortunately, some courts have misconstrued the holding in *Novotny* and have ignored the legislative history of the 1972 amendments to Title VII. These courts have found that Title VII is a plaintiff's exclusive remedy whenever the § 1983 claim arises from conduct also protected by Title VII, even when the § 1983 claim is based on the violation of a right protected by the Constitution. *See Torres v. Wisconsin Dept. of Health & Social Services*, 592 F.Supp. 922, 927 (E.D.

Wisc.1984) ("the charged constitutional deprivation inheres in the very creation and implementation of an allegedly discriminatory plan ... the claims are not sufficiently discreet to escape the *Novotny* proscription."). *See also Tafoya v. Adams*, 612 F.Supp. 1097 (D.C.Colo.1985); *Ratliff v. City of Milwaukee*, 608 F.Supp. 1109 (E.D. Wisc.1985); *Goodall v. Sedgwick County*, No. 82–1914 (D.Kan. unpub. Oct. 11, 1985). In effect, these courts have concluded that Title VII provides an exclusive remedy for state and local employees in discrimination cases. An employee who has been the victim of discrimination will virtually never be able to articulate a right secured by the Constitution which is "independent of her claim under Title VII." *Goodall*, at 4.

The courts which have relied on *Novotny* to dismiss § 1983 claims where constitutional violations were alleged have misapplied that case. *Novotny* does not apply to constitutional claims. In *Novotny* the court held "deprivation of a right *created* by Title VII cannot be the basis for a cause of action under § 1985(3)." 442 U.S. at 378, 99 S.Ct. at 2352 (emphasis added.) The plaintiff in *Novotny* sought redress for his employer's retaliation for opposing conduct made unlawful under Title VII. Therefore, the right was created by Title VII; it did not exist prior to the enactment of that statute. Accordingly, *Novotny* does not hold that § 1983 claims based on constitutional rights which predate Title VII are precluded.

■ Several courts have recognized this distinction, and this Court is persuaded by those decisions. In *Day v. Wayne County Board of Auditors*, 749 F.2d 1199 (6th Cir.1984), the court held:

Where an employee establishes employer conduct which violates both Title VII and rights derived from another source—the Constitution or a federal statute—which existed at the time of the enactment of Title VII, the claim based on the other source is independent of the Title VII claim, and the plaintiff may seek the

remedies provided by § 1983 in addition to those created by Title VII.

749 F.2d at 1205.

However, ... where employer conduct violates only Title VII, which created new rights and remedies for public employees, an aggrieved employee may [not] sue under both Title VII and § 1983.

749 F.2d at 1204.

In *Day*, the only wrongful act alleged was retaliation, a violation—not of the Constitution—but of Title VII. Therefore, the court dismissed the § 1983 claim.

The reasoning of the Sixth Circuit in *Day* is consistent with both the Supreme Court's holding in *Novotny* and with the legislative history of the 1972 amendments to Title VII. Under the *Day* analysis, a plaintiff may state a constitutional claim under § 1983 *even if* it stems from the same operative facts as the Title VII claim. *See also Zewde v. Elgin Community College*, 601 F.Supp. 1237 (N.D.Ill.1984). This is the distinction the *Torres* and *Goodall* courts failed to make. The right to be considered for employment without regard to sex was not created by Title VII; the Constitution itself addresses the matter by its guarantee of equal protection. *Storey v. Board of Regents of Wisconsin*, 600 F.Supp. 839. This constitutional protection applies to both men and women. *See Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1978); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Therefore, in a reverse sex discrimination case, a male employee may seek redress under Title VII, *and § 1983*. *See Meyett v. Coleman*, 613 F.Supp. 39 (W.D.Wisc.1985).

■ In the instant case the plaintiff has alleged he was discriminated against on the basis of his sex. He seeks relief under both § 1983—alleging violation of his right to equal protection and due process—and Title VII. Because plaintiff's right to challenge discrimination based on gender was not created by Title VII, but in fact preexisted that act, plaintiff is free to pursue his remedies under both theories.

Accordingly, defendants' motion for summary judgment on the § 1983 claim is denied.

The next issue before the Court is whether defendants are entitled to summary judgment on plaintiff's due process claim, which he has asserted independently of both his Title VII and § 1983 claims.

In *Bivens v. Six Unknown Federal Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), it was established that any person whose constitutional rights have been violated by a government official, and who has no alternative avenue of relief, may bring suit directly under the Constitution. Employment discrimination suits can be brought against state and local officials under § 1983. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Where relief is available under § 1983, a majority of courts refuse to allow actions directly under the Constitution. *Williams v. Bennett*, 689 F.2d 1370 (11th Cir.1982), *cert. denied* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *Ward v. Caulk*, 650 F.2d 1144, 1148 (9th Cir.1981); *Hearth, Inc. v. Dept. of Public Welfare*, 617 F.2d 381 (5th Cir.1980); *Turpin v. Mailet*, 591 F.2d 426, 427 (2d Cir.1979) (en banc); *Cale v. City of Covington*, 586 F.2d 311 (4th Cir. 1978); *Mahone v. Waddle*, 564 F.2d 1018, 1025 (3d Cir.1977), *cert. denied* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978); and *Kostka v. Hogg*, 560 F.2d 37, 42 (1st Cir.1977). This view is consistent with the Supreme Court's longstanding principle of avoiding constitutional questions whenever possible. *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936).

The Supreme Court has explicitly not addressed the interplay of § 1983 and *Bivens*-type actions. *See Mt. Healthy School Dist. Board of Education v. Doyle*, 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471 (1977). However, a heavy suggestion of preclusion was implied by the court's remand of two *Bivens* actions against municipalities following its decision in *Monell*. *See City of Independence v.*

*Owen,* 438 U.S. 902, 98 S.Ct. 3118, 57 L.Ed.2d 1145 (1978); *City of West Haven v. Turpin,* 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978).

 In this case, the plaintiff has "alternative avenues of relief" under Title VII and § 1983. Therefore, this Court finds that as a matter of law the plaintiff is precluded from bringing suit directly under the Constitution. Accordingly, defendants are entitled to summary judgment on plaintiff's *Bivens* claim.

Finally, defendants move for summary judgment on plaintiff's claim of retaliatory discharge because plaintiff failed to include this allegation when he filed his grievance with the KCCR on June 13, 1983. The charge filed with the KCCR generally alleges discrimination based on sex. Although plaintiff was terminated from employment in March of 1983—prior to when he filed the charge—no claim of retaliatory discharge was alleged therein.

A plaintiff must file a timely charge with the proper administrative agency encompassing the acts complained of as a prerequisite to filing suit under Title VII in federal court. *Alexander v. Gardner-Denver Co.,* 415 U.S. at 47, 94 S.Ct. at 1019. This requirement is central to Title VII's statutory scheme. The charge affords the administrative board "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 929 (11th Cir.1983). Allowing a complaint to encompass allegations outside the ambit of the predicate charge would circumvent the administrative agency's investigatory and conciliatory role as well as deprive the charged party notice of the charge.

The requirement that the scope of the charge limit the scope of the subsequent complaint is in the nature of a condition precedent with which litigants must comply. *Babrocky v. Jewel Food Co.,* 773 F.2d 857 (7th Cir.1985). New claims in the complaint are cognizable only if they are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164, 167 (7th Cir.1976) (en banc) (quoting *Danner v. Phillips Petroleum Co.,* 447 F.2d 159, 162 (5th Cir.1971)). The standard is a liberal one in order to effectuate the remedial purpose of Title VII, which itself depends on lay persons, often unschooled, to enforce its provisions. 538 F.2d at 167–68.

Nevertheless, in the case at bar, the Court must find plaintiff failed to satisfy the "condition precedent" as to the retaliation charge. This claim is separate and distinct from a discrimination claim, and even under a liberal analysis, it is not "reasonably related to the charges alleged." Therefore, defendants are entitled to summary judgment as to plaintiff's claim of retaliatory discharge, 42 U.S.C. § 2000e–3(a), as a matter of law. *See Eastwood v. Victor Temporaries,* 441 F.Supp. 51, 53 (N.D.Ga.1977), (harassment due to participation in prior employment investigation is not reasonably related to general charge of discrimination).

IT IS THEREFORE ORDERED this 27 day of May, 1986, that defendants' motion for partial summary judgment is granted in part, but denied as to the 42 U.S.C. § 1983 claim which will be allowed to stand.