**Lonnie MOORE, Plaintiff,**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, Defendant.**

**Civ. A. No. 88–2590–O.**

United States District Court,
D. Kansas.

Feb. 12, 1990.

**1016**

Robert Jeff Fendorf, Kansas City, Kan., for plaintiff.

Mark D. Perreault, Norfolk Southern Corp., Norfolk, Va., and Barbara A. Harmon, Shook, Hardy & Bacon, Overland Park, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on defendant's motion for summary judgment. This is an employment discrimination case in which plaintiff, Lonnie Moore, asserts a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, against defendant, Norfolk and Western Railway Company (NW), alleging (1) differential treatment in the terms and conditions of his employment and (2) racially motivated harassment. For the following reasons, the court grants defendant's motion.

When considering a motion for summary judgment, we must examine all evidence in the light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). If the moving party bears the burden of proof at trial, he must show, through pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This burden is met when the moving party identifies those portions of the record demonstrating an absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552.

If the moving party meets his requirement, the burden shifts to the nonmoving party who must not "rest on mere allegations or denials of his pleading," but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The trial judge then determines whether a trial is needed—"whether, in other words there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 252, 106 S.Ct. at 2512.

For purposes of this motion, the following facts are undisputed: Plaintiff Moore is a black male who was employed by NW as a brakeman/switchman in 1977. His employment record reflects five work-related disciplinary actions imposed between 1979 and 1985. On May 15, 1979, plaintiff received a five-day deferred suspension for "failing to protect his assignment." On July 7, 1981, plaintiff received a ten-day deferred suspension for the same ground. On March 26, 1985, Brown incurred a five-day deferred suspension for violation of a safety rule, and on September 20, 1985, Brown received an actual ten-day suspension for an attendance infraction. On October 15, 1985, plaintiff received a ten-day

deferred suspension for "failing to switch cars as instructed."

Moore's employment record also reveals that in 1983 and again in 1988, he submitted applications for tuition assistance under a company program, both of which were denied. In January 1986, plaintiff sought psychiatric treatment, due to work-related stress and depression, and was placed on disability status by his psychiatrist from early 1986 until October 1987.

On August 8, 1986, Moore filed a discrimination charge with the Equal Employment Opportunity Commission claiming racial discrimination in the terms and conditions of employment, including (1) unwarranted and excessive discipline on four instances dating May 15, 1979; July 9, 1981; March 26, 1985; and September 20, 1985; (2) unlawful denial of tuition reimbursement in 1983 and 1988; and (3) verbal and psychological harassment by superiors. Plaintiff additionally asserted that defendant failed to provide and ensure a working environment free from racially motivated harassment. On November 29, 1988, plaintiff filed the instant action, which included additional allegations of (1) unwarranted and excessive discipline on October 15, 1985; (2) improper suspension from September 21, 1985, through September 31, 1985; (3) improper furlough in December 1980; and (4) improper delay in returning plaintiff to work following medical leave.

In the case at bar, defendant claims that it is entitled to summary judgment on both procedural and substantive grounds.

A. *Procedural Considerations*

Defendant maintains that summary judgment is proper on the plaintiff's allegations of discrimination relating to (1) four of the five disciplinary actions;[1] (2) improper suspension; (3) improper furlough; and (4) the 1983 denial of tuition assistance. Defendant's argument is based on 42 U.S.C. § 2000e–5(e), which, in a deferral state like Kansas, provides that a Title VII complaint must be filed within 300 days of the alleged discriminatory act. Plaintiff, while con-

ceding that these claims occurred prior to the statutory 300–day period, counters that the statute of limitations is tolled under the theory of continuing violation.

■ The Tenth Circuit has recently reviewed the continuing violations theory as follows:

> To establish a continuing violation [a plaintiff] would have to show a series of related acts, one or more of which falls within the limitations period, *or* the maintenance of a discriminatory system both before and during the [limitations] period. The continuing violation can be either a company-wide policy of discrimination or a series of related acts taken against a single individual. The relevant distinction is between isolated and sporadic outbreaks of discrimination and a dogged pattern. Put another way, it is not the number of employees oppressed that matters, but the fundamental character of the oppression. The question ... then becomes whether sufficient evidence supports a determination that the alleged discriminatory acts are related closely enough to constitute a continuing violation.

*Bruno v. Western Elec. Co.*, 829 F.2d 957, 961 (10th Cir.1987) (citations and internal quotations marks omitted).

Although the instant case presents a close question, the court finds that since plaintiff has alleged that the series of acts constituted a pattern of harassment, and since one of the acts occurred within the 300–day limitations period (the October 15, 1985, discipline), plaintiff has alleged sufficient facts that, viewed in the light most favorable to him, would establish a continuing violation and thus toll the statute of limitations under *Bruno*.

■ Defendant also argues that summary judgment is warranted on plaintiff's claim related to his allegedly improper furlough in 1980, since such an allegation was not included in plaintiff's EEOC complaint. Defendant is correct in contending that generally the scope of the EEOC charge

---

1. Defendant concedes that one of the disciplinary actions (the October 15, 1985 action) alleged to be discriminatory occurred within 300 days prior to date the complaint was filed.

limits the scope of the complaint in any civil action that the complainant later files. *See Jensen v. Board of County Commissioners*, 636 F.Supp. 293, 300 (D.Kan.1986). In effect, the civil complaint should include only those claims which would have been addressed in the conciliation efforts at the administrative level. *See Kinsey v. Legg, Mason & Co.*, 60 F.R.D. 91, 96, (D.D.C. 1973), *rev'd on other grounds*, 557 F.2d 830 (D.C.Cir.1977). However, new claims may be addressed if they are derived from and reasonably related to the allegations in the EEOC charge. *Jensen v. Board of County Commissioners, supra*, 636 F.Supp. at 300. We note that the standard to be applied is more lenient when the EEOC charge was drafted by a complainant unrepresented by counsel. *See generally Harris v. First Nat. Bank of Hutchinson, Kan.*, 680 F.Supp. 1489, 1495 (D.Kan.1987).

Here, plaintiff was unrepresented by counsel at the time the EEOC charge was filed. Moreover, giving plaintiff's EEOC complaint a broad reading, we find that the allegation of improper furlough in the civil complaint is derived from and reasonably related to plaintiff's claim of racially-motivated harassment through improper adverse employment actions. Therefore, we decline to grant's defendant's motion on the allegation of improper furlough.[2]

### B. *Substantive Considerations*

█ Initially, plaintiff alleges he received differential treatment in various terms and conditions of employment because of his race. The analysis that a district court must follow in a Title VII disparate treatment case was recently reiterated by the Tenth Circuit:

First, the plaintiff must present a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 [93 S.Ct. 1817, 1824, 36 L.Ed.2d 668] (1973). This burden is satisfied by presenting a scenario that on its face suggests the defendant more likely than not discriminated against the plaintiff.

*See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Id.* If this initial burden is fulfilled, the defendant must set forth nondiscriminatory justifications for its allegedly discriminatory practices. *Id.* at 254–55, 101 S.Ct. at 1094–95. The burden of production placed on the defendant at this stage can be fulfilled by presenting nondiscriminatory reasons for its actions that are specific enough to provide the plaintiff with a "full and fair opportunity to demonstrate pretext." *Id.* at 256, 101 S.Ct. at 1095. ... The plaintiff then bears the ultimate burden of proving a statutory violation.

*Pitre v. Western Elec. Co., Inc.*, 843 F.2d 1262 (10th Cir.1988).

The majority of plaintiff's allegations of discriminatory treatment involve claims of discriminatory and unequal imposition of discipline. To establish a prima facie case on these facts, the plaintiff must show that (1) he was the member of a protected group; (2) there was company policy or practice concerning the activity for which he was disciplined; (3) nonminority employees either were given the benefit of a lenient company practice or were not held to compliance with a strict company policy; and (4) the minority employee was disciplined either without the application of a lenient policy, or in conformity with a strict one. *E.E.O.C. v. Brown & Root, Inc.*, 688 F.2d 338, 340–41 (5th Cir.1982); *Brown v. A.J. Gerrard Mfg. Co.*, 643 F.2d 273, 276 (5th Cir.1981).

Defendant argues that Moore has failed in his burden to establish a prima facie case of discrimination. We agree. Plaintiff has completely failed to show that any of the adverse disciplinary actions taken against him were more severe than those employed on nonminority employees. Although plaintiff argues that the various disciplinary actions were factually unwarranted, he has not presented evidence tend-

---

**2.** We find the same analysis would apply to plaintiff's allegation of alleged improper delay in being returned to work following an injury and improper suspension.

ing to show that any of the disciplinary actions imposed upon him were racially motivated.[3]

▇ Defendant further argues that even if plaintiff had established a prima facie case regarding the disciplinary actions, Moore has completely failed to produce evidence that defendant's proffered reasons for these actions were pretextual. We agree that plaintiff's conclusory statements that white employees were not subjected to similar disciplines are insufficient to establish any specific facts tending to show a relationship between the five instances of discipline and plaintiff's race.

▇ Similarly, Moore has failed to demonstrate that NW's denial of tuition benefits on two occasions was in any way race-based. To establish a prima facie case of discrimination in the terms and conditions of employment, such as tuition benefits, the plaintiff must establish the following: (a) plaintiff is a member of a protected group; (b) plaintiff is entitled to the desired terms and conditions of employment; (c) the employer denied plaintiff the desired terms and conditions of employment; and (d) nonprotected employees were granted the desired terms and conditions of employment. *Smith v. Midwest Grain Products, Inc.*, No. 84–4107 (D.Kan., *unpublished*, June 20, 1986).

Here, plaintiff has failed to establish the second prong of a prima facie case by failing to present evidence that he was entitled to the benefits he requested. Moreover, even assuming that plaintiff had established a prima facie case of discrimination, he cannot withstand defendant's motion for summary judgment because he has failed to offer any evidence which would tend to prove that defendant's non-discriminatory reasons for the alleged discriminatory actions were mere pretext.

In setting forth its justification for the denial of tuition benefits, defendant has presented affidavits and exhibits tending to show that tuition benefits were denied to plaintiff because he did not meet the qualifications necessary for participation in the tuition assistance program. The letter denying plaintiff's application for tuition assistance in 1983 explains that the denial is based on plaintiff's work status as an "extra board" switchman, making him subject to call at any time for shift work assignments. In 1988, tuition benefits were denied since plaintiff was not a full-time employee at the time of the application and since plaintiff had not demonstrated that the courses he planned to take were directly related to his present position as required. Although plaintiff has shown that two white employees received benefits at the time his were denied, he has failed to rebut defendant's evidence that both white employees were full-time workers as required by the company. Again, even if plaintiff had established a prima facie case related to the denial of tuition benefits, he has completely failed to offer any evidence, beyond his own assertions, which would tend to prove that defendant's proffered reasons for the alleged discriminatory acts were pretextual.

▇ We reach the same result with respect to plaintiff's additional allegations of adverse employment actions, including improper furlough, improper suspension and improper delay in returning him to work following an injury. Here, Moore must allege facts to show that (1) he is a member of a racial minority; (2) he was the object of an adverse employment action; and (3) there was a causal relationship between the adverse employment action and his membership in the protected class. *See Leftwich v. United States Steel Corp.*, 470 F.Supp. 758, 764 (W.D.Pa.1979).

Defendant contends that plaintiff has failed to establish the third prong of this test by failing to allege facts which tend to establish a causal relationship between his race and the adverse employment action. The court agrees and further observes that plaintiff has adduced insufficient evidence to give rise to even an inference of unlaw-

---

**3.** In fact, in regard to the plaintiff's ten-day deferred suspension from work imposed on October 15, 1985, for failing to switch cars, it is undisputed that a white employee also involved in the incident received the same suspension.

ful discrimination. *See Thomas v. Metroflight, Inc.,* 814 F.2d 1506, 1508 (10th Cir. 1987). Although plaintiff has established that he is a minority and that an adverse employment action was taken against him, plaintiff has failed to establish any race-based motivation for the adverse action.[4]

■ Finally, we agree with defendant that summary judgment is warranted on plaintiff's claim that he was subject to racially-motivated harassment. Initially, we note that plaintiff has based his harassment claim upon all of the allegedly improper employment actions discussed *supra,* as well as on alleged verbal and psychological harassment by superiors, claiming these aggregated acts created a work environment so racially hostile that he was forced to seek psychological treatment. However, since the court has found plaintiff's allegations of discriminatory discipline and discrimination in the various terms and conditions of employment to be untenable, they clearly may not serve as a foundation for plaintiff's harassment claim. Therefore, we decide the harassment claim solely on the basis of the alleged verbal and psychological harassment by superiors.

It is well settled that a black employee forced to work in an environment dominated by racial hostility and harassment has a claim for a Title VII violation, regardless of "any other tangible job detriment." *Gilbert v. City of Little Rock, Arkansas,* 722 F.2d 1390, 1394 (8th Cir.), *cert. denied,* 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984). However, more than a few isolated incidents of harassment must have occurred to establish a Title VII violation;

the racially derogatory comments must be considered excessive, opprobrious, and more than "casual conversation." *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1412–13 (10th Cir.1987) (citations omitted). Title VII is violated only where the work environment is so "heavily polluted with discrimination as to destroy the emotional and psychological stability of the minority [employee]." *Id.* at 1413.

Here, while Moore relates several incidents in which his superiors, McNamara and Adams, arguably wrongfully "hollered and cussed" at him for making mistakes, called him "dumb" and "stupid," and used profane language, he has not furnished the court with any evidence which demonstrates that these or any other statements were made with racial animus.[5] Further, while the record reflects that Moore was treated by a psychiatrist for work-related problems, nothing in the record provided by the treating physician points to racial harassment as the cause of Moore's psychological problems.[6] Since plaintiff has not demonstrated that the incidents of alleged harassment were racially motivated, we reject plaintiff's claim that NW permitted a work environment that was openly hostile to him based on his race.

In sum, we remind plaintiff that in a Title VII disparate treatment case, it is the plaintiff's burden to prove it more probably true than not true that "defendant intentionally discriminated against plaintiff." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). A person is being discriminated against if the employer

---

**4.** We note that the allegedly improper suspension from September 21–31, 1985, was imposed as a result of the disciplinary action taken on September 20, 1985 for an attendance infraction. Therefore, both allegations refer to a single act. With respect to the allegations of improper *furlough* and improper delay in returning him to work following an injury, Moore has merely stated that these actions violated his union contract.

**5.** Other statements allegedly made by supervisory personnel include a statement by Mr. McNamara that he was going to "come down and kick [plaintiff's] ass," a statement by Mr. Adams that plaintiff should "use matches" when

plaintiff asked for a light bulb. Plaintiff also states that Mr. Will ordered him to perform work which violated a safety rule and that Will "stalked" plaintiff after plaintiff reported the incident. Plaintiff further testified generally that supervisors did not verbally harass white employees, but conceded that the alleged "hollering and cussing" was directly related to errors made on the job.

**6.** Plaintiff's treating physician, Dr. Egea, stated that he treated plaintiff for depression and "for problems dealing with his fellow workers and his job in general." Egea also noted that plaintiff expressed "some paranoid ideation toward his work."

treats him "less favorably than others because of ... race ..." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), *quoting International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 344, n. 15, 97 S.Ct. 1843, 1859 n. 15, 52 L.Ed.2d 396 (1977). We note, however, that the federal discrimination laws do not require employers to treat all employees equally; rather, they prohibit employers "from meting out unequal treatment *based on race.*" *Clark v. Atchison, Topeka & Santa Fe Ry. Co.,* 731 F.2d 698, 702 (10th Cir.1984). In the present case, Moore's evidence of discrimination consisted primarily of his own statements that he was not treated as well as white employees. We find such evidence to be insufficient to survive defendant's motion for summary judgment on any of plaintiff's claims.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment is granted.