Isaiah **BROWN**, Plaintiff,

v.

**POLK COUNTY, IOWA a Municipal Corporation, Ray Sears, Former County Administrator for Polk County, and the Polk County Board of Supervisors, Defendants.**

**Civ. No. 4–91–10674.**

United States District Court, S.D. Iowa, C.D.

Dec. 22, 1992.

---

Robert A. Wright, Jr., Des Moines, IA, for plaintiff.

Mark Godwin, Asst. Polk Co. Atty., Des Moines, IA, for defendants.

## ORDER

LONGSTAFF, District Judge.

Before the Court is Defendants' Motion for Summary Judgment and to Dismiss for lack of subject matter jurisdiction. Plaintiff resists, and the matter was submitted without oral hearing.

### I. BACKGROUND

Plaintiff, Isaiah Brown, was terminated from his position as Director of the Polk County Information Services Department ("ISD") on December 3, 1990. In his capacity as Director of the ISD Brown was charged with supervision of approximately 50 employees. Brown was employed by the defendant Polk County and answered directly to defendant, Ray Sears. Sears, as Polk County Administrator, also made the initial recommendation to the Polk County Board of Supervisors, also defendants in this action, to hire Brown.[1]

Plaintiff alleges that during the course of his employment he was subjected to

racial and religious discrimination. Plaintiff further maintains that he was terminated without cause because of his religious beliefs and/or race.

On February 11, 1991, plaintiff filed a complaint with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination by his employer, Polk County. Plaintiff did not name Ray Sears in the complaint. Brown received a Right To Sue letter and brought this action alleging violations of 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964[2] and the Iowa Civil Rights Act.

Plaintiff's § 1983 action alleges that defendants, acting under color of state law, deprived plaintiff of his First Amendment Right to free exercise of religion and to his right to freedom of speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution. Plaintiff further alleged in Count II that the actions of defendants violated Title VII of the Civil Rights Act of 1964 by denying him employment on the basis of his religion and/or race.

### II. APPLICABLE LAW AND FACTS

#### A. Summary Judgment

Summary judgment is properly granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Before granting summary judgment, the moving party must establish the right to a judgment with such clarity that there is no room for controversy. See Jewson v. Mayo Clinic, 691 F.2d 405, 408 (8th Cir.1982).

The resisting party must set forth specific facts showing a genuine issue for trial and may not rely solely on legal conclusions to prove there is a genuine issue of material fact justifying denial of summary judgment. Fed.R.Civ.P. 56(e). However, "the mere existence of *some* alleged factual dispute between the parties will not de-

---

**1.** Brown's actual appointment, however, became final upon the passing of a resolution by the Polk County Board of Supervisors.

**2.** In 1972, Title VII was amended to include state and local employees within its provisions.

feat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original).

In deciding whether to grant a motion for summary judgment, the district court must view the evidence in favor of the party opposing the motion and give that party the benefit of all reasonable inferences. *Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986). Further, a court may not grant summary judgment simply because the nonmoving party appears to have a weak case. *Katz v. Goodyear Tire & Rubber Co.,* 737 F.2d 238, 245 (2d Cir.1984).

### B. Section 1983 and Title VII

■ Defendants argue that Title VII is the exclusive federal remedy for state and local employees seeking redress for employment discrimination.[3] Defendants contend that plaintiff's reliance on the same operative facts to support both his Title VII claim and § 1983 claim demonstrate that they share the same identity. Because Title VII provides the exclusive remedy for a claim based on employment discrimination, defendants reason, the § 1983 claim is preempted by Title VII.

■ Title VII and § 1983 differ in several respects. Under Title VII an employee must follow detailed procedures and exhaust all administrative remedies prior to bringing suit. 42 U.S.C. 2000e–5. Section 1983 has no such requirement. The limitation period for a § 1983 claim is generally longer than the 180–day limitation period for a Title VII claim.[4] The remedies provided for in the two statutes also differ: Section 1983 provides for both equitable and legal relief and Title VII awards only equitable relief. Prior to the 1991 Amendments to Title VII, the consequence of providing only equitable relief was no jury right. *Lehman v. Nakshian,* 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). Title VII and § 1983 also involve dissimilar legal standards. A plaintiff may recover under Title VII without proving intent, while intent is a necessary element in a § 1983 case.

The Supreme Court has not addressed the precise issue raised in this action. However, the Supreme Court has considered the availability of 42 U.S.C. § 1981, a companion to § 1983, as an alternative remedy to Title VII. In *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Court held that a private employee could seek relief under both Title VII and § 1981. Both claims, the Court noted, involved the same set of facts but found the claims "although related, and although directed to most of the same ends, are separate, distinct, and independent." *Id.* at 462, 95 S.Ct. at 1721.

In *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the Supreme Court concluded that, unlike a private employee, a federal employee may not maintain a § 1981 suit and a Title VII claim concurrently. *Id.* at 835, 96 S.Ct. at 1969. The *Brown* Court found the legislative history to § 717 of Title VII, which protects *federal* employees against intentional discrimination, confirmed that Congress intended § 717 to be an exclusive remedy. The Court distinguished *Johnson* as "rest[ing] upon the explicit legislative history of the 1964 Act." *Id.* at 833–34, 96 S.Ct. at 1968–69. The legislative history in regard to the exclusivity of § 717 is silent.[5]

■ The legislative history of that portion of Title VII applicable to state and local employees, however, presents a de-

---

**3.** *See* 42 U.S.C. 2000e *et seq.*

**4.** The limitation period for a § 1983 claim is two years. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (section 1983 actions should be characterized as tort actions for the recovery of damages for personal injuries).

**5.** *Brown* is therefore consistent with the rule that if legislative history is silent on the issue of exclusivity, courts will infer Congress' intent to create an exclusive remedy. *Jensen v. Bd. of Co. Comm's,* 636 F.Supp. 293 (D.Kan.1986); *Storey v. Bd. of Regents of Univ. of Wisconsin,* 600 F.Supp. 838, 841 (W.D.Wisc.1985).

tailed and clear picture of Congressional intent.

In establishing the applicability of Title VII to State and local employees, the Committee wishes to emphasize that the individuals right to file a civil action in his own behalf, pursuant to the Civil Rights Act of 1879, and 1871, 42 U.S.C. § 1981 and 1983 is in no way affected ... Title VII was envisioned as an independent statutory authority to provide an aggrieved individual with an additional remedy to redress employment discrimination ... the bill therefore, by extending jurisdiction to state and local government employees does not affect existing rights that such individuals have already been granted by previous legislation.

H.R. Rep. No. 92–238, 92 D Cong., 2d Sess., 1972 U.S.Code and Administrative News 2137, 2154. *See Keller v. Prince George's County*, 827 F.2d 952 (4th Cir.1987) (Title VII did not preempt nonpromoted employee's § 1983 action for violation of the Fourteenth Amendment); *Jensen v. Bd. of Co. Comm's*, 636 F.Supp. 293 (D.Kan.1986): *Curran v. Portland Superintending School Comm.* 435 F.Supp. 1063 (D.C.Maine 1977). The legislative history of the 1972 amendment illustrates Congress' intention to provide state and local employees with remedies under both Title VII and § 1983.[6]

Defendants rely on *Foster v. Wyrick*, 823 F.2d 218 (8th Cir.1987) to argue that Title VII is plaintiff's exclusive remedy. In *Foster* the Eighth Circuit determined that a Title VII disparate impact claim may not be asserted in a § 1983 action.[7] *Id.* at 222. The court determined that disparate impact claims were *created* by Title VII and therefore Title VII was plaintiff's exclusive remedy. *Id.* at 221. Moreover, the court emphasized that Foster could not avoid the administrative machinery of Title VII by artfully pleading a § 1983 claim. "Unimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § [1983]." *Id.* at 221 *citing Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979).

Unlike the facts of *Foster*, however, plaintiff's right to challenge discrimination based on race and religion was not created by Title VII. Instead, plaintiff's claim is well rooted in the Constitution itself. The Sixth Circuit recognized the import of this distinction in *Day v. Wayne County Board of Auditors*, 749 F.2d 1199 (6th Cir.1984), where it stated:

Where an employee establishes employer conduct which violates both Title VII and rights derived from another source—the Constitution or a federal statute—which existed at the time of the enactment of Title VII, the claim based on the other source is independent of the Title VII claim, and the plaintiff may seek the remedies provided by § 1983 in addition to those created by Title VII.

*Id.* at 1205.

However, ... where employer conduct violates only Title VII, which created new rights and remedies for public employees, an aggrieved employee may [not] sue under both Title VII and § 1983.

*Id.* at 1204. The fact, therefore, that plaintiff's § 1983 claim alleges constitutional violations not created by Title VII distinguishes the facts of this case from *Foster*. Furthermore, plaintiff is not seeking to avoid the administrative machinery of Title VII by also pleading a § 1983 claim. In fact, plaintiff filed his administrative claims with the EEOC and the Iowa Civil Rights Commission in a timely manner.

Plaintiff's claims under Title VII and § 1983 constitute separate and independent

---

6. *Johnson* and *Brown* both indicate that it is such legislative history which governs the question of Title VII's exclusivity. *See also Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (clear congressional intent to allow additional remedies even though a statute contains a comprehensive remedial scheme will govern despite the general rule favoring exclusivity).

7. In *Foster* a prisoner brought a § 1983 action alleging disparate treatment based on race. *Foster*, at 220.

legal claims. The trier of fact could conclude that defendants violated one and not the other. Because the focus is on whether plaintiff's Title VII and § 1983 claims are separate legal claims "a plaintiff may state a constitutional claim under § 1983 even if it stems from the same operative facts as the Title VII claim." *Jensen,* 636 F.Supp. at 299. Brown makes separate claims under both Title VII and § 1983; Title VII is not his exclusive remedy.

### C. Defining "Employee" Under Title VII.

■ Defendants argue that plaintiff falls within one of the exemptions to Title VII's definition of "employee" and is therefore unable to maintain this suit. *See* 42 U.S.C. Section 2000e(f). An employee, and therefore an individual who may seek redress under Title VII, is defined as follows:

> The term employee means an individual employed by an employer except that the term employee shall not include any person elected to public office in any state or political subdivision of any state by the qualified voters thereof, or any person chosen by such officer to be on such officers personal staff, or an appointee on the policy making level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office....

42 U.S.C. 2000e(f). Exemptions to Title VII coverage are to be construed narrowly. *Goodwin v. Circuit Court of St. Louis County,* 729 F.2d 541, 548 (8th Cir.1984). Unless the Director of the Information Systems Department for Polk County is on a policymaking level or an immediate advisor to the Board of Supervisors, plaintiff would fall within the definition of "employee" and is able to maintain this action.

The Eighth Circuit addressed the policymaking level exemption in *Stillians v. Iowa,* 843 F.2d 276 (8th Cir.1988).[8] *See also Gregory v. Ashcroft,* 898 F.2d 598 (8th Cir.1990).[9] In *Stillians,* the Director of the Iowa Arts Council exercised "broad discretionary powers" and was "undoubtedly on a policymaking level." *Id.* at 279. The court noted that the Director position, as defined by Iowa law, gave plaintiff the ability to employ personnel and fix their compensation, enter into agreements and contracts, appoint advisory committees and survey existing cultural and artistic programs. *Id.* at 276. A determination that the plaintiff in *Stillians* had broad discretionary, rather than solely administrative, powers placed her within the confines of the policymaking exemption and precluded her from maintaining a Title VII claim.

Plaintiff's responsibilities, though supervisory in nature, were more administrative than discretionary. Plaintiff's chief responsibility was to oversee the employees and operations of the ISD. Although plaintiff set goals, made recommendations for improvement and initiated proposals, any ultimate decision making on important, policy initiatives was left to Ray Sears and ultimately the Board of Supervisors. Unlike the plaintiff in *Stillians,* Brown did not have *exclusive* control over the policy decisions governing his office.[10]

The 8th Circuit subsequently acknowledged, however, that "[w]e do not believe that the list of factors in *Stillians* was intended to be exhaustive or necessarily applicable in all respects to every kind of appointed official." *Gregory v. Ashcroft,* 898 F.2d 598, 604 (8th Cir.1990).

---

**8.** In *Stillians* the court was deciding the exemption under the Age Discrimination in Employment Act, 29 U.S.C. § 621–34. The ADEA claim merits the same consideration as the Title VII claim, since the ADEA contains the same definition of "employee". *See Bostick v. Rappleyea,* 629 F.Supp. 1328 (N.D.N.Y.1985).

**9.** The court in *Stillians* articulated three factors relevant to the determination of whether an employee falls within the policymaking level exemption: "(1) whether the Director has discretionary, rather than solely administrative powers ... (2) whether the Director serves at the pleasure of the appointing authority ... (3) whether the Director formulates policy...." *Stillians,* 843 F.2d at 278–79 (citations omitted).

**10.** The reasoning in *Stillians* illustrates the differences between the Arts Council post at issue in that case and plaintiff's position as Director of the ISD.

> State governors must be given broad discretion to fill policymaking positions without fear of being sued by disappointed office seekers. While the policy behind the ADEA certainly is laudatory, in certain instances · it must give way to the realities of a governmen-

■ Furthermore, defendants have not established that plaintiff's relationship with the Board of Supervisors qualifies him for the immediate advisor to an elected official exemption. This exemption was intended to apply to employees who are in "a close personal relationship" with an elected official. *Goodwin* 729 F.2d at 548. Plaintiff's closest working relationship was with Ray Sears, an appointed County Administrator. Plaintiff's contact with the Board of Supervisors was through Ray Sears. Even the resolution passed by the Board appointing plaintiff was at the direction of Mr. Sears. The record does not support a finding that Brown served on a policymaking level or that he was an "immediate advisor" to the Polk County Board of Supervisors.

### D. Failure to Name Defendant Sears in EEOC Complaint

■ Defendants seek disposition of the Title VII claim against defendant Ray Sears on the ground that Sears was not named in the administrative charge before the Iowa Civil Rights Commission and the EEOC. Plaintiff, however, asserts that because Sears and Polk County share an identity of interest his failure to name Sears was not fatal to the present claim.

■ A claimant who fails to name a party in the administrative charge generally may not sue that party under Title VII. *See Schiele v. Charles Vogel Mfg. Co.*, 787 F.Supp. 1541, 1546 (D.Minn.1992). The aim of the filing requirement is to give notice to the employer and encourage the employer's voluntary compliance with Title VII. *Greenwood v. Ross*, 778 F.2d 448, 450 (8th Cir.1985). Omission of a party's name from an EEOC charge, however, does not automatically preclude suit against that party under Title VII. *Id.* To do so in every instance would frustrate the remedial goals of Title VII.

■ Failure to include a party in an EEOC complaint is not fatal to a subsequent claim where there is sufficient identity of interest between the unnamed defendant and the party named in the administrative charge. *Greenwood*, 778 F.2d at 451. *See also Johnson v. Palma*, 931 F.2d 203 (2d Cir.1991); *Romain v. Kurek*, 836 F.2d 241 (6th Cir.1987); *Romero v. Union Pacific R.R.*, 615 F.2d 1303, 1311 (10th Cir.1980); *Glus v. G.C. Murphy Co.*, 562 F.2d 880 (3d Cir.1977). The identity of interest exception applies where the interests of a named party are so similar to those of the unnamed party's that for purpose of obtaining voluntary conciliation and compliance it is unnecessary to include the unnamed party in the EEOC proceeding.

In *Greenwood* the Eighth Circuit concluded that the failure to name a university's chancellor and athletic director in the EEOC complaint filed by an assistant basketball coach was not fatal to plaintiff's Title VII claim. *Greenwood*, 778 F.2d at 451. The court found an identity of interest between the university and the unnamed defendants. *Id.* The court also noted that the unnamed parties "had notice of the proceedings against them and were represented by counsel from the beginning." *Id.* Finally, dismissal of the claims against the unnamed parties would result in a frustration of the purposes of Title VII. *Id.* The Title VII claim, therefore, was allowed to proceed against the unnamed parties.

Unlike the plaintiff in *Greenwood*, Ray Sears states in his affidavit that he did not have notice of plaintiff's complaint with the EEOC.[11] The *Greenwood* court, however, did not hinge its decision on the issue of notice. Instead, the court emphasized the identity of interest between the named and unnamed parties. *But see Waldermeyer v. ITT Consumer Fin. Corp.*, 782 F.Supp. 86 (E.D.Mo.1991).[12] This court must therefore

---

tal system in which officials elected by the people are granted authority to fill certain high level positions with people they feel are most qualified.

*Stillians* 843 F.2d at 279.

11. In fact, Sears recently left his employment with Polk County at the time Sears filed his complaint with the EEOC.

12. The court in *Waldermeyer* determined that a Title VII action against an unnamed defendant was improper where the defendant was un-

determine whether the identity of interest between Sears and Polk County was so similar that the failure to name Sears in the EEOC complaint was immaterial to the goals of the filing requirement—to promote conciliation and remedial action.

Sears, as Polk County Administrator, acted on behalf of Polk County in the County's relationship with the plaintiff. *See Greenwood* 778 F.2d at 451. The complaint against Polk County was prompted by actions allegedly taken by Sears during the course of his employment. The EEOC proceedings and any attempts at conciliation, therefore, were pursued by Polk County in their capacity as Sears' employer. Because Sears was no longer employed by Polk County his failure to receive notice did not frustrate the aims of the EEOC filing requirement—to promote conciliation and remedial action.[13] Further, there is no indication that Sears was prejudiced by the exclusion of his name from the EEOC complaint. The goal of the filing requirement, therefore, was achieved when Polk County, as Sears' employer, represented his interests in proceedings before the EEOC. Because Sears and Polk County shared an identity of interest, the failure of plaintiff to name Sears in the EEOC complaint was not fatal to his Title VII claim.

## III. CONCLUSION

IT IS ORDERED that defendant's Motion for Summary Judgment and to Dismiss for lack of subject matter jurisdiction is DENIED.

---

aware of the proceedings against his former employer. It is the determination of this Court, however, that the "identity of interest" analysis is not wholly dependent upon the issue of notice.

13. Polk County was the only party capable of taking remedial action regarding Brown's alleged discrimination. This goal of the EEOC filing requirement, therefore, could not be achieved by naming Sears in the EEOC complaint.