**Walter Everett RAY, Plaintiff-Appellant,**

v.

**SAFEWAY STORES, INC.,**
**Defendant-Appellee.**

**No. 78–1594.**

United States Court of Appeals,
Tenth Circuit.

Submitted Nov. 28, 1979.

Decided Feb. 7, 1980.

Michael S. Kaminski, Denver, Colo., for plaintiff-appellant.

Gregory A. Eurich of Holland & Hart, Denver, Colo., for defendant-appellee.

Before HOLLOWAY, McWILLIAMS and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

After satisfying his administrative remedies, Walter Ray, a black person, filed this action against Safeway Stores, Inc., alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The case was tried by stipulation before an United States magistrate sitting as special master pursuant to Rule 53 of the Federal Rules of Civil Procedure. The Master recommended that judgment be entered in favor of Safeway. The trial court approved the Master's findings and dismissed the action. We affirm.

During the time the incidents giving rise to this appeal took place, Ray was employed on the day shift at the Safeway Denver Milk Plant. His work involved boxing milk on the production line with two white employees. Although Ray was considered a good worker, he had a history of unexcused tardiness and had received several letters of reprimand as a result.

Ray and one of his two white co-workers developed a personality conflict which affected the efficiency of their operation. Rec., vol. II, at 87. The plant superintendent, Grant Smith, attempted to resolve the conflict by having Ray and the other employee switch duties. It was hoped that this change would give each man a better appreciation of the other person's work. Rec., vol. II, at 84. Such a switch had previously been used by the superintendent with two other employees. Rec., vol. II, at 88–90. Neither Ray nor his co-worker wanted to change job duties, but both originally agreed to do so. Rec., vol. II, at 84, 87–88, 140. Because Ray objected to the 5:00 a. m. starting time of his co-worker, it was agreed that Ray could start at 6:30 a. m. instead.

On the morning Ray was to begin his new duties, he informed his shift supervisor that he would not change jobs. When he persisted in his refusal, he was terminated for insubordination. Safeway later offered to reinstate Ray conditioned on certain disciplinary action but Ray refused.

The Master found that Ray's discharge was not racially motivated. Ray appeals this finding as contrary to the weight of the evidence, contending the evidence supports a finding that the valid business reason offered by the company to rebut the prima facie case of discrimination was a pretext for racial discrimination.

■ A master's findings may not be disturbed unless clearly erroneous. Fed.R. Civ.P. 53. In applying this standard, the test is whether we are left "with the definite and firm conviction that a mistake has been committed." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969); *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *Reyes v. Hoffman,* 580 F.2d 393 (10th Cir. 1978).

■ Under the three-part analysis of a claim of employment discrimination set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Furnco Const. Co. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1977), Ray must first establish a prima facie case of employment discrimination. We believe he did this by showing (1) that he belongs to a racial minority; (2) that he was qualified for his job; (3) that, despite his qualifications, he was discharged; and (4) that after his discharge the job remained available.[1] *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824.

1. The prima facie test set forth in *Taylor v. Safeway Stores, Inc.,* 365 F.Supp. 468 (D.Colo. 1973), *rev'd in part on other grounds,* 524 F.2d 263 (10th Cir. 1975), and referred to by the Master, is stricter than the *McDonnell Douglas* test and should not have been applied. However, in view of our conclusions herein, the error was harmless.

Once a prima facie case of discrimination has been established, the burden shifts to the employer to prove that the employment decision was based on a legitimate consideration, and not an illegitimate one such as race. The employer need only "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.; Furnco, supra*, 438 U.S. at 578, 98 S.Ct. at 2950.

Ray asserts that both the switch in job assignments and the discharge which resulted from his refusal to make the change were discriminatory. Safeway states that the assignment change was made to resolve a personality conflict which was affecting production efficiency, and that Ray was terminated for insubordination. In this connection, it is undisputed that Ray refused to comply with a direct order to switch jobs, an order that the company was authorized to make. The plant manager testified that he felt it was necessary to deal firmly with insubordination to prevent it from spreading to other plant employees and affecting overall plant operation. Rec., vol. II, at 129–130. This legitimate business purpose is sufficient to rebut the prima facie case presented by Ray.

Ray therefore must carry the burden of proving that the legitimate justification offered by Safeway was merely a pretext for discrimination. *McDonnell Douglas, supra; Furnco, supra*. Relevant to such a showing would be evidence that white employees in substantially similar circumstances were treated differently. *McDonnell Douglas, supra*. Ray has made no such showing. In his brief, Ray offers only one reason to support his contention that his discharge was a mere pretext for discrimination: that no alternatives for termination were ever discussed, such as requesting that his white co-worker be given the same choice offered to Ray, or suspending Ray without pay. Appellant's Brief at 8. On the contrary, however, as we previously noted, both Ray and his white co-worker were required to switch job duties and neither was satisfied with the arrangement. Nevertheless, Ray's white co-worker did not refuse to make the change, and there was no evidence that anyone else had ever refused a direct order with regard to job assignments. In addition, Ray admitted at trial that an alternative to termination was discussed. In fact, Safeway offered to reinstate him with two week's suspension without pay, an offer which he refused. Rec., vol. II, at 44–45.

Other relevant factors in a showing of pretext include Safeway's general policy and practice with respect to minority employment, and Safeway's treatment of Ray prior to termination. *McDonnell Douglas, supra*. No evidence was offered by Ray to show that Safeway had a general policy of treating black employees differently than white employees. Ray did offer evidence that the plant superintendent, Grant Smith, made a derogatory remark about Ray's race. Rec., vol. II, at 162. However, Smith denied making the remark, Rec., vol. II, at 111, and the Master expressed serious concern about the credibility of the witness who testified about the alleged derogatory comment. Rec., vol. I, at 33.

Moreover, the evidence shows that Robert Gridley, the plant manager who had ultimate authority for discharging Ray, Rec., vol. II, at 91–92, 129, was favorably impressed with Ray and encouraged him to take advantage of a management training program which Safeway offered its employees. Rec., vol. II, at 128. In addition, when Ray objected to the early starting time of 5:00 a. m. required in connection with the proposed job change, it is uncontested that he was readily accommodated and the time was changed to 6:30 a. m.

Upon review of the evidence as a whole, we are not left with a definite and firm conviction the Master was mistaken in concluding that the decision to discharge Ray was based on Ray's conduct as an individual, and that his race was irrelevant. Accordingly, we affirm.