**Joann L. BOYD, Plaintiff,**

v.

**TELECABLE OF OVERLAND PARK, INC., James (Jim) Pirner and Laura Fitzsimmons, Defendants.**

**Joann L. BOYD, Plaintiff,**

v.

**TELECABLE OF OVERLAND PARK, INC., James Pirner and John Downey, Defendants.**

**Civ. A. Nos. 89–2063–O, 89–2334–O.**

United States District Court, D. Kansas.

Oct. 26, 1990.

Mark S. Gunnison, John H. Fields, Carson & Fields, Kansas City, Kan., for plaintiff.

Lori R. Schultz–Biggins, Morrison, Hecker, Curtis, Kuder & Parrish, Overland Park, Kan., Paula A. Hilburn, Ford & Harrison, Atlanta, Ga., for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

The plaintiff, Joann L. Boyd (hereinafter "Boyd"), filed a claim under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) against defendants Telecable of Overland Park (hereinafter "TOP"), Laura Fitzsimmons (hereinafter "Fitzsimmons") and James Pirner (hereinafter "Pirner"), alleging racial discrimination in work assignments and management of a sales contest (Case No. 89–2063–O). Boyd later filed another claim (Case No. 89–2334–O) against defendants TOP, Pirner and John Downey (hereinafter "Downey") under Title VII and 42 U.S.C. § 1981, alleging retaliation against her for filing a claim with the EEOC.

Plaintiff Boyd worked in TOP's telemarketing department from June 21, 1987, until she was fired March 23, 1988. Fitzsimmons was her supervisor. Downey was the supervisor of the upgrade department of TOP and apparently had no authority over plaintiff. Pirner was TOP's general manager.

The case is now before the court on several motions: (1) defendants' motion for summary judgment; (2) plaintiff Boyd's motion to strike portions of affidavits in support of the motion for summary judgment; (3) Boyd's motion to review a ruling of the Magistrate; and (4) Boyd's motion to amend the Pretrial Order.

### I. The Motion for Summary Judgment.

The defendants filed the present motion on May 21, 1990, asserting that they are entitled to summary judgment in both cases. A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244, 248, 106 S.Ct. 2505, 2508, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

First, the court will consider defendants' purely legal argument that Boyd cannot recover in Case No. 89–2334–O because 42 U.S.C. § 1981 does not support a claim for conduct occurring after the formation of the employment relationship.

*A. The legal status of a § 1981 claim for discharge.*

Section 1981 provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as it is enjoyed by white citizens...." 42 U.S.C. § 1981. The only issue is whether Boyd's discharge could interfere with the right "to make and enforce contracts." The Supreme Court applied section 1981 to the private employment context in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The Court said that section 1981 is implicated only when there is an opportunity for a "new and distinct relation between the employee and the employer." *Id.* at ——, 109 S.Ct. at 2377.

Defendants argue that Boyd's section 1981 claim cannot survive the *Patterson* holding, because section 1981 "expressly prohibits discrimination only in the *making* and *enforcement* of contracts." *Id.* at ——, 109 S.Ct. at 2372 (emphasis added). The court agrees with *Patterson* that:

> [T]he right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.

*Id.* See *Payne v. General Motors Corp.,* 731 F.Supp. 1465 (D.Kan.1990); *Anderson v. United Auto Workers,* 738 F.Supp. 441 (D.Kan.1990).

■ Boyd urges the court to follow the line of cases holding that retaliatory discharge interferes with the right to enforce the contract, and consequently, section 1981 applies. *Birdwhistle v. Kansas Power & Light Co.,* 723 F.Supp. 570 (D.Kan.1989) (*disagreed with by Dean v. Taco Tico, Inc.,* 1990 WL 78546, 1990 U.S. Dist. LEXIS 6824 (D.Kan.1990)); *Vance v. Southern Bell Tel. & Tel. Co.,* 863 F.2d 1503 (11th Cir.1989); *Padilla v. United Air Lines,* 716 F.Supp. 485 (D.Colo.1989) (*disagreed with by Dean v. Taco Tico* ). The court respectfully disagrees with this line of cases. That interpretation of section 1981 is inconsistent with the Supreme Court's admonition to narrowly construe the statute:

> In his separate opinion, JUSTICE STEVENS construes the phrase "the same right ... to make ... contracts" with ingenuity to cover various postformation conduct by the employer. But our task here is not to construe [§ ] 1981 to punish all acts of discrimination in contracting in a like fashion, but rather merely to give a fair reading to scope of the statutory terms used by Congress. We adhere today to our decision in Runyon that [§ ] 1981 reaches private conduct, but do not believe that holding compels us to read the statutory terms "make" and "enforce" beyond their plain and common sense meaning. We believe that the lower courts will have little difficulty applying the straight forward principles that we announce today.

*Id.* at —— n. 6, 109 S.Ct. at 2377 n. 6. The court declines the invitation to sidestep *Patterson,* noting that precedent dealing with statutory interpretation is especially weighty. *Id.* at —— n. 1, 109 S.Ct. at 2371 n. 1 When a remedy exists under another statute (such as Title VII) it is not the court's duty to inquire why suit was brought under the wrong law, or to tortuously stretch § 1981 to cover the situation. *Id.* at ——, 109 S.Ct. at 2374–76. Without controlling precedent to the contrary, the court believes this interpretation is more consistent with section 1981 and *Patterson.*

■ Plaintiff's alternate theory, that at-will employment creates a new contract each day, overlooks the fact that *Patterson* requires a 'new and *distinct* relationship': any "new" contract between Boyd and TOP would be for *exactly the same* relationship.

Boyd cannot recover under either theory. As a matter of law, the defendants are entitled to summary judgment on the section 1981 claim in Case No. 89–2334–O.

The other claims raise questions which require the court to examine the facts.

### B. The Title VII discrimination charge.

Boyd's original claim was that TOP, Fitzsimmons and Pirner violated Title VII in their distribution of "sales routes" and administration of a sales bonus contest. The contest awarded a $200 first prize to the salesperson with the highest number of new sales in a month. Sales were made from lists of customers, called "sales routes," which were generated by a computer terminal and distributed by Fitzsimmons. Distribution was on a "first-come, first-served" basis, but subject to the policy that no telemarketer could have more than seven routes at a time. A log book was kept, recording the date each route was distributed and returned.

Plaintiff had won most of the contests since she began working at TOP in June 1987, and was leading in the November 1987 contest. She claims that she requested new routes informally on the 18th (Wednesday) and 19th (Thursday) of November, but the route log book reveals that she did not turn in any routes on either day. Boyd did not work Friday or Saturday. On Saturday (Nov. 21), Jack Bezdek and Zona McClellan turned routes in, and got new routes. The log book does not show the time the routes were returned, but it does show that Jack and Zona both had no more than seven routes by the end of their shifts on Saturday.

On Sunday, the computer went down. No routes were available until after the 25th, when the computer was repaired and Boyd (and others) got new routes. When the computer went down, Boyd had seven routes. Boyd complained later to defendant Pirner that the computer failure had affected the contest, and that some adjustment should be made. Pirner and Fitzsimmons investigated the situation and decided that everyone was at an equal disadvantage, and no adjustment or change in the contest would be made. Jack had made the most sales in November and was declared the winner. Boyd won seventy-five dollars

for second place. Boyd filed a charge with the EEOC (Doc. 5), and was issued a "right to sue letter" (att. to Doc. 4) on November 8, 1988. This action followed.

The process of analyzing Title VII actions has been clearly stated:

First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." [citation omitted] Third, should the defendant carry his burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). The plaintiff always has the ultimate burden of persuasion. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94.

■ To establish a prima facie case of discrimination in the terms and conditions of employment, the plaintiff must show that: (1) she was a member of a protected group; (2) she was entitled to the desired terms and conditions of employment; (3) the employer denied plaintiff the desired terms and conditions of employment; and (4) nonprotected employees were granted the desired terms and conditions of employment. *Moore v. Norfolk & Western Ry. Co.*, 731 F.Supp. 1015, 1018 (D.Kan.1990). Each "prong" of this test must be satisfied in order to establish a prima facie case.

■ The first prong is established here: it is not disputed that plaintiff is a black female. Boyd fails the second and third prongs, however, because she presents no evidence that she was entitled to the conditions she requested, or that she was denied any condition to which she was entitled. By inferring that Boyd meant she was enti-

tled to more than seven routes, the second and third prongs arguably could be met. The fourth prong would also then be met because the court would be able to infer that Jack Bezdek, a white male, had more than seven routes at one time. The problem lies in defining the "terms and conditions" to which Boyd was entitled.

Although plaintiff never articulated the precise "terms and conditions" to which she claimed entitlement, we presume that Boyd means she was entitled to at least seven routes during the contest and that the contest be conducted fairly. The record indicates that TOP's rules allow telemarketers in Boyd's department a maximum of seven routes at any one time, to ensure exhaustion of sales leads. According to the TOP distribution policies, it appears that Boyd was entitled to seven routes. There were no contest rules (as such) submitted by either party, but apparently the person with the most sales, minus cancellations, would be declared the winner. The court finds that Boyd was entitled to these basic rules and policies.

There has been no showing that Boyd was *denied* the seven routes to which she was entitled. Boyd received four new routes on November 11. From November 11th to the 23rd (the next time the log book recorded that she returned a route), she was in possession of seven routes: Nos. 09001, 23017, 23028, 23038, 24024, 24020, 24017–18. She had exactly what TOP rules said she was entitled to have. Boyd was entitled to a fairly-run sales contest, but she was not entitled to get preferential treatment. On the days she requested new routes she had the maximum of seven. Assuming that Fitzsimmons received Boyd's requests for new routes, company policy prevented Boyd from receiving a new route until she first turned one in.

The court concludes that TOP followed its own, race-neutral rules for distributing routes; in short, Boyd was not denied a fair contest. Boyd's only remaining argument is that she was entitled to *more* than seven routes.

Because the log book does not show what time Jack turned his routes in on Saturday, the plaintiff may be entitled to the inference that Jack indeed had more than seven routes at some point. The record is unclear whether Jack simply got his own routes on Saturday, or if defendant gave them to him. Neither the record nor the pleadings disclose that any defendant was present on the weekend to give Jack new routes. No other fact supports an inference that any defendant acted in violation of Boyd's rights, denying her the claimed conditions, while "granting" them to Jack. Accordingly, the second and third prongs of the prima facie test fail.

Even if we assume that Boyd has established a prima facie case of discrimination, she cannot defeat defendant's motion for summary judgment because she has failed to offer any evidence tending to prove that defendants' reasons for their alleged discriminatory actions were pretextual.

Defendants' evidence shows that Boyd was not given additional sales routes because she had the maximum of seven routes. They were unable to give her a route on the 23rd (when she turned one in) because the computer that generated routes was out of order. Inasmuch as no one received routes while the computer was disabled, the defendants determined that no employee had an advantage over another and therefore the contest results need not be altered.

Computer failure can hardly be considered an act of intentional discrimination. The seven route policy was race-neutral, and Boyd received new routes at the earliest time feasible. The defendants were aware of Boyd's complaints, including the allegation that Jack had an unfair advantage. Defendants' decision to continue the contest without adjustment was a business decision, and should be accorded a great deal of deference. *See Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir.1988). The court finds defendants have articulated legitimate non-discriminatory reasons why Boyd was treated as she was. The burden therefore shifts back to Boyd to establish that these reasons were a pretext for discrimination.

To avoid summary judgment, a party must produce "specific facts showing that there remains a genuine issue for trial" and evidence " 'significantly probative' as to any material fact claimed to be disputed." Thus plaintiffs' mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.

*Branson,* 853 F.2d at 771–72 (citations omitted).

Boyd's only apparent rebuttal to defendants' reasons is that TOP somehow violated its own policy when Jack and Zona got new routes on Saturday. As discussed earlier, plaintiff fails to look beyond the surface of the TOP "first-come, first-served" policy. Boyd is in no position to claim that the entire department was prohibited from receiving new routes until she came back to work. Nor has she produced evidence tending to show that any of the defendants acted in violation of TOP policy. Boyd has simply failed to come forward with evidence establishing that defendants' reasons for their actions were pretextual.

Boyd also alleges disparate treatment based on her allegations that: black employees' work areas were kept close to Fitzsimmons's office; black employees were continually told to keep working, but white employees were allowed to move about freely; only white workers had computer access codes; and Downey made arguably racial remarks. Downey's remarks were that: Boyd was incapable of learning the computer; "you people don't get sick"; and that Boyd should "act like Phil" (another black employee whom Boyd felt was too deferential to whites). None of these incidents, even under the totality of the circumstances, supports an inference of bias.

There is no evidence in the record before the court to support a conclusion that Boyd was the victim of racial discrimination. Even if the court were to infer that there was some scheme to prevent Boyd from winning the contest, there is nothing to indicate that the defendants acted against her *because of her race.* Under *Burdine,* Boyd's burden is to show that it is more probably true than not true that the defendants intentionally discriminated against her because of her race. *Moore,* 731 F.Supp. at 1020, *citing Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. She has failed to carry this burden. The court concludes that there are no material facts in dispute, and defendants are entitled to summary judgment in case No. 89–2063–O.

### C. The Title VII retaliation charge.

■ Boyd's last claim is that defendants TOP, Pirner, and Downey retaliated against her for filing the first charge with the EEOC. The general Title VII (*Burdine/McDonnell–Douglas*) analogy of claims applies to retaliation cases. *Burrus v. United Tel. Co.,* 683 F.2d 339, 343 (10th Cir.1982), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982) *citing Mitchell v. Visser,* 529 F.Supp. 1034, 1044 (D.Kan.1981). A prima facie case of retaliation requires a showing of: (1) employee participation in a Title VII proceeding; (2) adverse action by the employer after or during such employee activity; and (3) a causal connection between the employer's action and the employee activity. *Burrus,* 683 F.2d at 343.

■ Boyd claims that defendants retaliated against her by subjecting her to close scrutiny, creating a "paper trail" of negative supervisory reports, subjecting her to racial slurs and insults, and requiring her to put all communications with Fitzsimmons in writing. Boyd alleges these actions were in retaliation for her filing the EEOC claim against them. The court is unable to find that Boyd has established a causal connection between any of these events and the filing of her EEOC claim. Furthermore, even if we assume that she has made a prima facie case, Boyd has failed to rebut defendants' non-discriminatory reasons for their purported adverse actions.

Defendants have presented evidence that the reason for the adverse reports and alleged close supervision was Boyd's disruption of the department. She was ultimately terminated because of her insubordination. Her disruption of the department

is well documented by the reports and depositions of co-workers. Her disruption and insubordination are sufficient reasons for her termination. *See Ray v. Safeway Stores, Inc.,* 614 F.2d 729, 730–31 (10th Cir.1980). Boyd must meet her burden under *Burdine* and *Branson* to show that these reasons are pretextual.

In support of her argument that defendants' reasons were pretextual because of the biased environment at TOP, Boyd relies on *Brown v. Parker–Hannifin Corp.,* 746 F.2d 1407 (10th Cir.1984). That case is distinguishable. The situation here was not nearly so pervasive as that in *Brown,* nor was there an indication of conscious inaction by the defendants. Simple assertions of pretext are not sufficient to overcome an employer's non-discriminatory reasons and to defeat a motion for summary judgment. *Branson,* 853 F.2d at 772.

The court finds that neither case (89–2063–O & 89–2334–O) presents genuine issues of material fact and that the defendants are entitled to summary judgment in both cases.

## II. Boyd's Motion To Strike.

Plaintiff has filed a motion to strike portions of the depositions in support of the defendants' motion for summary judgment. Boyd asserts that the materials are inadmissible under the Federal Rules of Evidence: as lay opinion (Rule 701); hearsay (Rules 801–804); or are irrelevant or otherwise in violation of the Federal Rules of Evidence.

The summary judgment movant must only show the non-existence of genuine issues of fact. Fed.R.Civ.P. 56(c). Clearly, the rule contemplates that affidavits may be filed, but they are not absolutely unnecessary. The requirements of Rule 56(e) merely prescribe the form of any proffered affidavits. The evidence which the court may consider on a motion for summary judgment is enlarged, rather than restricted, by the provisions of Rule 56(e). *See* 10A Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 2721.

Defendants filed numerous affidavits factually supporting their position. The rule requires that these affidavits shall be made on personal knowledge, set forth facts admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Fed.R.Civ.P. 56(e). Many of the portions of affidavits requested to be stricken concern matters reported to the defendants by Boyd's co-workers, and generalizations based on those communications.

■ The court finds that the statements are being offered to show the existence of employee complaints made to defendants, the investigation by defendants into the working atmosphere at TOP, and the basis for the decision to fire Boyd. The statements themselves are not hearsay, because they are not presented for the truth of the matter asserted. Fed.R.Evid. 801.

■ The lay opinions and conclusions that plaintiff challenges are within the parameters of Rule 701 of the Federal Rules of Evidence. They are based on the witnesses' perceptions and are helpful in understanding their testimony or facts in issue. The statements plaintiff seeks to have stricken also have relevance to various issues in the case, including some raised by the plaintiff herself.

The court finds no basis for striking the evidence as requested by the plaintiff.

## III. Boyd's Motion to Review Magistrate's Order.

The court originally scheduled discovery to close on February 28, 1990 (Doc. 37). On plaintiff's motion, the deadline for deposing individuals was extended to April 10 (Doc. 39). On April 19, plaintiff again moved for an extension of time for additional discovery (Doc. 40), and the motion was denied (Doc. 47). Boyd challenges Magistrate Rushfelt's order denying her motion (Doc. 40). Plaintiff sought the extension in order to take the depositions of Pirner, Fitzsimmons, and two other witnesses. In his order of May 17, 1990, Magistrate Rushfelt stated:

After giving due consideration to the motion and after hearing statements and arguments of counsel, the court finds

that the motion for extension of time is untimely. The Pretrial Orders provide that the cases shall be ready for trial after May 21, 1990 and disposition of any pending motions. For these reasons the court overrules the Motion for Extension of Time to Complete Discovery.

Order of Magistrate Rushfelt (Doc. 47).

■ The standard for review of a magistrate's decision is whether the decision is clearly erroneous or contrary to law. Fed. R.Civ.P. 72(a). Although Boyd suggests that an abuse of discretion standard applies in discovery matters, this is not the law, nor would it be helpful to the plaintiff in this instance.

■ Boyd argues that her discovery was not completed because another attorney had agreed to conduct it while her attorney (Mr. Fields) was busy preparing for other pending litigation. This argument overlooks the fact that the date set for completion of discovery had been extended once before at her request. The withdrawal of other counsel did not negate the obligation to complete discovery as ordered by the court.

Plaintiff asserts that the magistrate erred because the purpose of Pretrial limits on discovery is to ensure orderly trial preparation, "uninterrupted by a flurry of midnight discovery." Plaintiff's brief at 5. This argument fails to support plaintiff's position. Case No. 89–2063–O had been on file since February 1989, and Case No. 89–2334–O was filed July 25, 1989. The action against defendants Fitzsimmons and Pirner had been on file thirteen months (and nine months against Downey) when the motion for extension was filed on April 19, 1990 (nine days after discovery had closed).

The court concludes that the Magistrate's ruling was not clearly erroneous, contrary to law, or, for that matter, an abuse of discretion.

## IV. Boyd's Motion to Amend Pretrial Order.

At the pretrial conference, Boyd moved the court to amend her pleadings to add a Title VII claim of racially discriminatory discharge. The magistrate denied the motion, limiting the case to the issues which he then set out in the Pretrial Order (Doc. 41). Plaintiff now moves this court to allow amendment of the Pretrial Order to include the Title VII claim.

■ The decision whether to allow amendment is discretionary with the district court. *See* 6 Wright, Miller: Civil 2d § 1526. Plaintiff waited until after discovery had closed to make this motion. She gives no adequate reason for this delay, which is sufficient by itself to deny the motion. *Words & Data, Inc. v. Dataman Information Services, Inc.*, 1988 U.S. Dist. LEXIS 7257 (D.Kan.1988). The motion now comes too late.

■ Alternatively, plaintiff suggests that the court "liberally construe" the Pretrial Order to state a claim for racial discharge, citing *Century Refining Co. v. Hall*, 316 F.2d 15, 20 (10th Cir.1963), and *Stone v. First Wyoming Bank N.A.*, 625 F.2d 332, 347 (10th Cir.1980). Neither of these cases are persuasive when applied to the facts here. Unlike the situation in *Stone*, plaintiff proposes the addition of an entirely new claim not stated anywhere before in her pleadings. Unlike *Century*, the claim sought to be added is not "inherent in the issues defined" in the Pretrial Order.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Doc. 49) is granted.

IT IS FURTHER ORDERED that plaintiff's motion to strike portions of the materials submitted in support of defendants' motion for summary judgment (Doc. 56) is denied.

IT IS FURTHER ORDERED that plaintiff's motion to review the magistrate's order (Doc. 36, Case No. 89–2334) is denied.

IT IS FURTHER ORDERED that plaintiff's motion to amend the Pretrial Order (Doc. 34, Case No. 89–2334) is denied.