Shirley A.E. JONES, Plaintiff,

v.

**J.C. PENNEY COMPANY, INC.,**
**et al., Defendants.**

No. 93–2239–JWL.

United States District Court,
D. Kansas.

June 1, 1995.

Deryl W. Wynn, McAnany, Van Cleave & Phillips, P.A., Bill L. Klapper, Kansas City, KS, Albert F. Kuhl, Olathe, KS, Kevin E. Koch, Kansas City, KS, for plaintiff Shirley Jones.

Shirley A.E. Jones, Kansas City, KS, pro se.

Christine M. McKee, Lathrop & Norquist, Kansas City, KS, Mark A. Ferguson, Lathrop & Norquist, Overland Park, KS, Jack D. Rowe, Brian N. Woolley, Lathrop & Norquist, Kansas City, MO, William R. Wollett, Plano, TX, for defendants J.C. Penney Co. Inc., Larry O'Shea, Clyde Harmon.

**1.** Plaintiff's claims against the defendants Larry O'Shea and Clyde Harmon were dismissed with

**MEMORANDUM AND ORDER**

LUNGSTRUM, District Judge.

This is an employment discrimination action in which the plaintiff, Shirley A.E. Jones, claims she was the victim of unlawful race and age discrimination and unlawful retaliation for the filing of a complaint with the Equal Opportunity Employment Commission (EEOC), in violation of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 (Title VII), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* She contends that the defendant, J.C. Penney Company, Inc. (Penney),[1] unlawfully discriminated and/or retaliated against her when it demoted her from her position as a merchandise assistant manager, denied her promotional opportunities, and reduced the hours she was permitted to work at the Penney store in Overland Park, Kansas. Plaintiff seeks compensatory, punitive and liquidated damages for her claims.

A trial to the court was held in this matter on May 23 and 24, 1995. The court is now prepared to issue its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). For the reasons set forth fully below, the relief requested by plaintiff is denied and judgment is to be entered in favor of the defendant in this action.

**Findings of Fact**

1. Plaintiff Shirley Jones is an African American female and is fifty-six years of age. She was employed by defendant Penney for approximately 22 years, the last five of which were at defendant's retail store in Oak Park Mall, Overland Park, Kansas.

2. Plaintiff began work at Penney's Oak Park Mall store in September of 1989. She first worked in the catalog department, but was promoted shortly thereafter to the position of Merchandising Assistant.

3. Larry O'Shea, a caucasian male who was the personnel manager at the Oak Park Mall store, promoted plaintiff to the position

prejudice on December 22, 1994.

of Merchandising Assistant. Mr. O'Shea has worked for Penney in various positions, at various locations, for twenty-eight years. He is presently an Assistant Manager at a Penny's store in Springfield Missouri. He worked at the Oak Park Mall from 1981 to April of 1992 and was in charge of personnel during the period of time relevant to this lawsuit.

4. In late 1991, no departments at the Oak Park Store were managed by a minority employee and only a small percentage of all employees were African American.

5. The merchandising assistant position is, at least in part, a supervisory-type of position and requires providing leadership and direction to the salespersons in a particular department of the store. It also entails administrative duties, retail selling and working with the store's computerized cash register system.

6. As a merchandising assistant, plaintiff worked in the men's sportswear area. She reported to Clyde Harmon, a caucasian male who was the merchandise manager. He had overall responsibility for the men's sportswear, clothing and accessories area, as well as the young men's sportswear area. Mr. Harmon still works for the Oak Park Mall store.

7. While a merchandising assistant, plaintiff's performance was reviewed several times by Mr. Harmon. Several written reviews were shown to her and placed in her employment file. On April 15, 1990, plaintiff received an overall rating of "3," "meets job requirements," on a scale of "1" to "5" ("1" being an "outstanding" rating). She received ratings of either "meets job requirements" or "exceeds requirements" in every area of performance. On November 1, 1990 she received an overall rating of "2," "exceeds requirements," and was deemed to have met or exceeded all requirements of her position. In April of 1991, she received an overall rating of "2." That review provides that she did not meet the requirements of her position with respect to her on-time record, but that she met or exceeded all other requirements of her position. In her reviews it was noted that plaintiff did an excellent job in providing customer service and had excellent "people skills."

8. In 1990, plaintiff was absent two days and late seven times. Her review as of October 1, 1990 did not indicate any deficiency in her attendance or "on time" record. In 1991, plaintiff was late five times and absent nine times. Six of those absences, however, were attributed to a single incident in which plaintiff was injured in a car accident and could not work. For purposes of Penney records and attendance policies, her supervisors treated the six absences from the car accident as a single absence. Thus, for official purposes, plaintiff was absent four times in 1991. Mr. Harmon's review of plaintiff's 1991 performance, done in 1992 pursuant to Penney's policy of reviewing for the preceding year, indicated that her attendance record did not meet Penney requirements, a less favorable rating than the year before.

9. On September 28, 1991, plaintiff failed to notify the store that she was going to be late and was, in fact, approximately 3–1/2 hours late to work that day. Mr. Harmon verbally warned plaintiff that her failure to call was unacceptable. The day in question was a Saturday, the busiest day of the workweek during the non-holiday season. Mr. Harmon believed plaintiff was late because of another job she was working.

10. On December 12, 1991, plaintiff had an argument with Carol Szymanski, an Asian American female who was forty-five years of age and was another merchandising assistant in the men's department. Plaintiff believed that Ms. Szymanski inappropriately chastised a salesperson in front of a customer. During the confrontation, plaintiff "mumbled" something about Ms. Szymanski being a "witch" or "being on a broom." Mr. Harmon spoke with both women about the incident. He believed that plaintiff improperly "side[d] with other employees against [a] fellow merchandising assistant." He believed that plaintiff "had a tough time understanding her loyalties" to management and other managing assistants. He also believed her actions were a poor example for the salespeople and did not provide proper leadership.

11. The day after Christmas is one of the, if not the, busiest day of the year in the

men's department at the Penny store. A large number of customers are present for after-holiday sales and there are traditionally a large number of returns and exchanges that day. Penney does not permit employees to take vacation or personal holiday time on this day.

12. Plaintiff was scheduled to work on December 26, 1991. She called the store receptionist, Robyn Glosenger, a caucasian female, shortly after 8:00 a.m. and told her that she would be taking the day off. Ms. Jones explained that she unexpectedly had to take her daughter to the airport and had other things she needed to do. She did not tell Ms. Glosenger that she was ill, nor did she sound hoarse on the phone. Ms. Glosenger wanted plaintiff to speak with Mr. Harmon, but he was unavailable, so she directed plaintiff's call to Marcea Brown, a caucasian female who was another employee in the department. Plaintiff told Ms. Brown that she was ill and would not be coming to work.

13. Ms. Glosenger, who is no longer employed by Penney, unequivocally testified that plaintiff did not say she was ill when she first called, but instead said she had many things to do including taking her daughter to the airport and going to the bank. Ms. Glosenger had a clear recollection of the conversation with plaintiff, independent of any documents or papers she has read or reviewed in conjunction with this case. She testified she remembered the conversation because it was so unusual and that in her two and one half years at the Penny store she had never received a call from an employee saying that they were simply taking the day off, especially on one of the busiest days of the year. The court finds Ms. Glosenger to have been a very credible witness with no motivation to misrepresent the conversation that took place between her and the plaintiff.

14. By contrast, plaintiff's testimony with regard to this phone call was not so unequivocal. While she stated clearly that she did not go to work the day after Christmas because she was suffering from laryngitis and because her daughter had no way to get to the airport (plaintiff's daughter had to return to Georgia where she attended college), and that she did not tell Ms. Glosenger that she

had to go to the bank or had other errands to run, her testimony was deficient in other respects. She faltered somewhat in attempting to explain the alleged disparities between what she told Ms. Glosenger were the reasons for her absence and the reasons she gave Ms. Brown. The court finds as a matter of fact that the reasons plaintiff initially gave for her absence were materially different from those she expressed to Ms. Brown after it was clear that management, Mr. Harmon, would be made aware of the absence and the reasons therefor. The court finds as a matter of fact that it is Ms. Glosenger's version of the conversation that more closely reflects what actually occurred.

15. Mr. O'Shea was made aware of plaintiff's absence and proceeded to call her around 8:45 a.m. He told her that the reasons given for her absence were unacceptable and that she should return to work. Plaintiff told Mr. O'Shea that she objected to his calling her at home and that she would get a doctor's note for her absence. She then abruptly hung up. The court is persuaded that Mr. O'Shea believed that plaintiff was taking the day off for the reason's she had given to Ms. Glosenger.

16. On an absence sheet filled out on December 26, 1991, Ms. Glosenger indicated that the reason for plaintiff's absence was that she had to take her daughter to the airport and she "just wanted to take a day off!" On the same sheet, Mr. O'Shea indicated that he returned a call to plaintiff, that plaintiff sounded hoarse and run down, but that Ms. Glosenger had indicated that she had sounded fine just a few minutes earlier.

17. Plaintiff called in sick to work on December 27, 1991. While she was absent, she did go to see a doctor and received a note from a nurse at the doctor's office stating that she could return to work after December 27th. The note does not document any medical condition with which she was suffering, however. She returned to work on her next scheduled date, which was December 30th.

18. On Monday, December 30, 1991, Mr. O'Shea met with plaintiff and Mr. Harmon and informed her that she was being demot-

ed to a sales associate (salesperson) position. A "Corrective Action Record" was filled out and read to plaintiff at that time. It stated the following:

> Shirley called in 12/26 @ 8:15 to advise the store she was taking the day off. She indicated that she had lots to do—take daughter to airport—go to bank—and many other things. Shirley also called in Friday indicating that she would not be in, that she was ill. Shirley's initial response to the store was one of taking the day off—not being ill. The day after Christmas is a very busy day and requires all our Merchandising Assistants and key people to be at work. Shirley's reason for not being at work is unacceptable. The position of Merchandising Assistant carries with it—setting example for other assistants, sales leadership of the Department. Shirley has not fulfilled these requirements. Part of being an M.A. is being reliable, dependable and Shirley was not missing work the day after Christmas. Shirley is being demoted to 021 Sales Associate. Any further deviation to Shirley's on time or absence performance will lead to her termination.

Mr. Harmon signed the report as a witness and also concurred in the decision to demote plaintiff. Plaintiff refused to sign the correction action record.

19. Ms. Jones' colleague, Carol Szymanski, had been absent two days before Christmas in 1991. She had arrived at the Penney store on time on December 23rd and had attempted to work. After a certain amount of time, it became clear to Mr. Harmon that Ms. Szymanski was very ill, so he sent her home. She took off the following day, but returned to work after Christmas. Ms. Szymanski had received outstanding performance reviews from management and, throughout 1991 and 1992, was absent only one time and was never late. Mr. O'Shea did not believe the situation with Ms. Szymanski was comparable in any respect to that with plaintiff, mainly because of Ms. Szymanski's performance record and the fact that she actually had made the effort to come to work despite her illness and had to be sent home by management.

20. Plaintiff's demotion left two vacant merchandising assistant positions in the men's department, one in young men's sportswear and one in men's sportswear. In late January 1992, two employees were promoted to merchandising assistant to fill these vacancies: Beatrice Curry, a caucasian female who was fifty-two years of age, and Marcea Brown, a caucasian female who was twenty-three years of age. Ms. Curry was assigned to young men's and Ms. Brown was assigned to men's sportswear, plaintiff's previous position. There was, however, no particular significance attached to which employee was assigned to which position.

21. On January 23, 1992, Mr. Harmon, who scheduled plaintiff's hours, met with Ms. Jones and advised her that because there would be a slow down in hours after the first of the year, and because the two merchandising assistant positions would be filled, there would be fewer hours available for all sales associates, including plaintiff. Merchandising assistants and stock handlers have priority over sales associates in the scheduling of hours at the Penney store. Sales associates typically work evenings and weekdays and do not receive as many hours as merchandising assistants.

22. Plaintiff informed Mr. Harmon at or shortly after the January 23rd meeting that she was only available to work 12:00–5:00 p.m. Monday through Thursday, 12:00–9:00 p.m. Friday, and 1:30–9:00 p.m. Saturday, and all day Sunday. Plaintiff had another job at Monogram Retailer Credit Services, Inc. (Monogram), and, as her hours at the Penney's store decreased, she began to take on more hours at Monogram. She eventually began to work full-time at Monogram. Monogram paid a higher hourly wage than plaintiff had ever received from Penney.

23. In May of 1992, plaintiff further limited her available hours at the Penney store. Throughout 1992 she never informed Mr. Harmon that she wanted him to schedule her for more hours of work.

24. The court finds that plaintiff worked fewer average weekly hours after her demotion to a sales associate because of the restrictions she placed upon her availability

and because of the fact that all sales associates were given limited hours and low priority in scheduling by virtue of store policies and procedures.

25. Beginning in August of 1992, Connie Ellenburger Wekenborg, a caucasian female, replaced Mr. Harmon as plaintiff's manager and, accordingly, was responsible for scheduling all of plaintiff's hours. Plaintiff has no claims regarding treatment she received from Ms. Wekenborg.

26. In March or early April 1992, a new position was created called a Basic Logic Assistant. Ms. Jones was not considered for this position, which would have been a promotion, because of her recent demotion.

27. Ms. Jones filed a charge of discrimination with the EEOC on January 24, 1992. She received a right-to-sue letter on March 31, 1993.

28. Race was not a motivating factor in the defendant's decision to demote plaintiff, its failure to promote plaintiff, nor in the reduction of hours made available to plaintiff to work at the Penney store.

29. Age was not a determining factor in the defendant's decision to demote plaintiff, its failure to promote plaintiff, nor in the reduction of hours made available to plaintiff to work at the Penney store.

30. Retaliation for the filing of an EEOC charge of discrimination was not a motivating factor in the defendant's failure to promote plaintiff to a basic logic assistant position or to reduce her available hours.

### Conclusions of Law

1. Plaintiff claims that her demotion was motivated by her race and her age. She further claims that her hours were reduced and she was denied certain promotions because of her race and/or age and in retaliation for the filing of an EEOC complaint.

2. To prevail on a claim of race discrimination under Title VII, plaintiff bears the burden of proving by a preponderance of

the evidence that her race was a motivating factor in the defendant's employment decisions concerning her. *Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1236 (10th Cir. 1991). Under the shifting burden of proof scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and modified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Once plaintiff has met this burden, defendant must come forward with a legitimate, nondiscriminatory reason for its actions. *Drake v. City of Fort Collins,* 927 F.2d 1156, 1160 (10th Cir.1991). The burden then shifts back to the plaintiff to show that the reason articulated by the defendant is merely a pretext for discrimination. *Mac-Donald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1119 (10th Cir.1991). Plaintiff bears the ultimate burden of proving intentional discrimination on the basis of her race. *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2753, 125 L.Ed.2d 407 (1993); *E.E.O.C. v. Flasher Co., Inc.,* 986 F.2d 1312, 1316 (10th Cir.1992). The court, as the trier of fact, is required to weigh all the evidence and to assess the credibility of witnesses in order to determine whether the plaintiff was the victim of unlawful intentional discrimination. *See U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715–16, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Pitre v. Western Electric Co.,* 843 F.2d 1262, 1266 (10th Cir.1988).[2]

3. The court finds that plaintiff has established a prima facie case of race discrimination with respect to her demotion: she is within the protected category, she was qualified for her position, she suffered an adverse action and she was replaced by persons of another race. *See Drake,* 927 F.2d at 1159. The court finds also that defendant has articulated a legitimate, nondiscriminatory reason for her discharge: a failure to demonstrate appropriate leadership. Defen-

---

**2.** To the extent the plaintiff seeks relief pursuant to 42 U.S.C. § 1981, the court applies the same analysis as it does under Title VII and reaches the same conclusions. *Drake,* 927 F.2d at 1162. To prevail on her section 1981 claim, plaintiff must show that the defendant intentionally discriminated against her on the basis of her race. *Id.; Taliaferro v. Voth,* 774 F.Supp. 1326, 1332 (D.Kan.1991).

dant has offered evidence that a merchandising assistant was required to demonstrate such leadership and to set a positive example for sales associates. Defendant has also offered evidence that plaintiff's attendance problems, her confrontation with Ms. Szymanski, and in particular her actions on December 26, 1991 were not in accord with defendant's requirements.

■ 4. The burden, then, rests on the plaintiff to persuade the trier of fact, in this case the court, that race was a motivating factor in Penny's decision to demote her. *St. Mary's Honor Ctr.*, —— U.S. at ——, 113 S.Ct. at 2753. As evidence of pretext, plaintiff primarily relies on defendant's treatment of Ms. Szymanski, who, like plaintiff, was absent from work around the time of the busy Christmas holiday. Plaintiff contends that the inconsistent treatment of Ms. Szymanski, an Asian American woman, and herself, indicates that race was a motivating factor in the decision to demote her. The court is not so persuaded. Ms. Szymanski's performance record was significantly and consistently better than plaintiff's, she was always on time and was almost never absent, and was never perceived as having any difficulties leading or setting a good example for the sales associates. Unlike plaintiff, who refused to show up to work, Ms. Szymanski was specifically sent home by Mr. Harmon because he observed she was too ill to be working. Moreover, Ms. Szymanski never had a confrontation with Mr. O'Shea similar to that of plaintiff on the morning of December 26, 1991 when she abruptly hung up on the personnel manager. In short, the situation with Ms. Szymanski was not comparable to that of the plaintiff and the court draws no inference of unlawful discrimination from the different treatment of the two women.

5. Plaintiff offers little other evidence of pretext. She points to her strong overall performance as a merchandizing assistant and the fact that there were no African American supervisors and only a few other African American employees at the Penney store; however, the court is simply not persuaded by this evidence that the defendant's articulated reasons were a pretext for race discrimination. The court is not persuaded that Mr. O'Shea, the manager who promoted plaintiff to the position of merchandising assistant, was motivated by racism when he demoted her roughly two years later. The court recognizes that discrimination is difficult to prove and that, while its harms are immense, its forms and manifestations may be subtle and difficult to detect. Nevertheless, racism and discrimination may not be presumed: they must be shown according to the rules and precepts set out by Congress and the courts. Plaintiff has not succeeded in making that showing here.

6. The court does not necessarily condone the employment decision that was made in this case. The demotion of a loyal and competent employee, who has served her employer well for over twenty years, seems harsh and unfair under the circumstances. However, absent evidence of or a finding of pretext for unlawful discrimination, the court is not permitted to substitute its judgment for that of the defendant. *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988); *Walker v. AT & T Technologies*, 995 F.2d 846, 849 (8th Cir.1993). The court is simply not persuaded, by a preponderance of the evidence, that plaintiff's race was a motivating factor in the defendant's decision to demote her.

■ 7. The court is also not persuaded that her race was the motivating factor in defendant's decision not to promote plaintiff to the positions of customer service representative or basic logic assistant. Plaintiff did not inquire of any of the participants in this case about these positions, she did not ask them to put her in these positions, nor is there any evidence that race was a motivating factor in the decision not to consider her for or place her in these positions.

■ 8. Finally, the court is not persuaded that race was a motivating factor in the decision to reduce plaintiff's hours at Penney. The court has found, as a matter of fact, that plaintiff's hours decreased due to her demotion, the decreased priority given the hours of sales associates by Penney policies, and the limitations plaintiff herself put on her Penney hours due to her job with Monogram. The court is far from persuaded that the

reduction in plaintiff's hours was motivated by her race or that the defendant's proffered reasons are a pretext for race discrimination.

9. Under the ADEA, plaintiff bears the burden to show that age was a determinative factor in the employer's decisions. *E.E.O.C. v. Sperry Corp.*, 852 F.2d 503, 507 (10th Cir.1988). Plaintiff must first establish a prima facie case by showing she was: (1) within the protected age group; (2) doing satisfactory work (qualified for the position); (3) adversely affected by defendant's employment decision; and (4) replaced by a younger person. *Jones v. Unisys Corp.*, 54 F.3d 624, 629–30 (10th Cir.1995). Once plaintiff has established these elements, the burden shifts to the employer to articulate a facially nondiscriminatory reason for its employment decision. *Flasher*, 986 F.2d at 1316 n. 4. The burden then shifts back to the plaintiff to show that age was a determining factor in the challenged decision and that the defendant's proffered reasons were really a pretext for age discrimination. *Id.; see also Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir.1994).

10. Plaintiff has met her burden to establish a prima facie case of age discrimination by showing that she is in the protected category, she was doing satisfactory work, she was demoted, and her position was filled by a younger person. As already stated, defendant has articulated a facially valid and nondiscriminatory reason for her demotion. Plaintiff has not, however, met her burden to show that age was a determinative factor in defendant's decision to demote her. Plaintiff has offered no direct and very little circumstantial evidence that the defendant's proffered reasons were a pretext for age discrimination. Other than her prima facie case, there is little evidence that her age was at all a factor or played any role in the defendant's decision-making process, let alone that it "made the difference," in the defendant's adverse employment decision. *See Rea*, 29 F.3d at 1455; *Sperry Corp.*, 852 F.2d at 507. For the reasons already stated with respect to plaintiff's race discrimination claim, the court does not draw an inference of age discrimination from the difference in treatment of plaintiff and Ms. Szymanski. In the face of defendant's articulated reasons, and the abundance of evidence in support thereof, plaintiff's claim must fail. Plaintiff has not met her burden to persuade the court, by a preponderance of the evidence, that age was a determining factor in the decision to demote her.

11. Similarly, the court is not persuaded that age was a determining factor in the defendant's decision not to promote her to the customer service or basic logic positions or in its decision to reduce the amount of hours she could work at the Penney store.

12. The shifting burden of proof scheme already outlined also applies to plaintiff's claim of retaliation for filing a charge of discrimination with the EEOC. For her prima facie case, plaintiff must produce evidence that she filed a charge, an adverse action was taken by her employer after her filing, and a causal connection exists between the employer's action and the filing of her charge. *Boyd v. Telecable of Overland Park*, 752 F.Supp. 388, 394 (D.Kan.1990). The ultimate burden of persuasion rests with the plaintiff to show that retaliation was a motivating factor in her employer's decision. *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993).

13. The court assumes, for purposes of analysis here, that plaintiff has established a prima facie case of retaliation for the filing of a charge of discrimination with the EEOC.[3] Even if a prima facie case has been established, it has been sufficiently rebutted in that the defendant has clearly articulated legitimate, nondiscriminatory reasons for its decisions: first, that plaintiff's self-proscribed limitations on her availability resulted in her reduced working time; and second, that she was not qualified for, nor would her schedule permit her to be available for, the basic logic assistant position. After careful consideration of all the evidence presented, the court finds that plaintiff has not met her burden to persuade the court that these articulated reasons are pretextual or that retaliation motivated the defendant's de-

---

**3.** At the close of plaintiff's evidence, the court took under advisement defendant's motion for judgment as a matter of law with respect to plaintiff's claim of retaliation. That motion is hereby denied.

cisions. Moreover, the court is not persuaded, as a factual matter, that a causal connection existed between plaintiff's filing of the charge and either a reduction of her hours or the failure to promote her to a basic logic assistant position. There is no evidence that Mr. Harmon, the person who scheduled plaintiff's hours, knew about the filing of the charge of discrimination at any time while he supervised plaintiff. Nor is there persuasive evidence that Mr. O'Shea was reacting to the filing when he did not consider plaintiff for the basic logic assistant position.

### Conclusion

Accordingly, the court finds in favor of the defendant, J.C. Penney Company, Inc., and against the plaintiff on her claims of unlawful discrimination and retaliation pursuant to Title VII, 42 U.S.C. § 1981 and the ADEA.

**IT IS THEREFORE ORDERED BY THE COURT** that judgment be entered in favor of the defendant, J.C. Penney Company, Inc., on all claims.

**IT IS FURTHER ORDERED** that defendant's motion for judgment as a matter of law on plaintiff's claim of retaliation, made at the close of plaintiff's evidence and taken under advisement by the court, is denied.

**IT IS SO ORDERED.**